*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

ROBERT ELIJAH ANTHONY,

        Defendant-Appellee.

FOR PUBLICATION
January 22, 2019

No. 337793
Wayne Circuit Court
LC No. 16-008132-01-FH

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

GLEICHER, J. (*dissenting*).

The trial court held an evidentiary hearing to determine whether the police constitutionally searched defendant Robert Anthony's vehicle. One witness testified: Detroit Police Officer Richard Billingslea. Billingslea insisted that he initiated a *Terry* stop of Anthony's parked pickup truck because it was impeding traffic. A video recording made by Anthony's neighbor showed a legally parked truck. The trial court believed what it saw in the recording, not Billingslea. It ruled the seizure pretextual and the search unconstitutional.

The majority holds that the police actually seized the truck based on Billingslea's back-up explanation that he smelled "burning marijuana" emanating from the vehicle. This was just a routine, "consensual" street encounter, the majority maintains, until the marijuana odor transformed it into a police investigation. I respectfully disagree for three reasons.

First, Billingslea repeatedly reaffirmed that he detained the truck because it was impeding traffic. The trial court did not believe that the truck was illegally parked and found that Billingslea restrained Anthony's freedom of movement without reasonable suspicion that a traffic offense had been committed. Read fairly and in context, the trial court ruled that the marijuana smell entered into the equation only after the seizure had been accomplished. The court suppressed evidence of the weapon found in the vehicle because the officers had neither reasonable suspicion nor probable cause to seize and then search Anthony or his truck.

Second, the majority ignores the trial court's factual finding that Anthony's vehicle was seized when the officers pulled alongside to investigate the "impeding" violation. The court did not clearly or legally err in finding that the officers' conduct would have communicated to a

reasonable person that he was constrained from leaving at that point. The majority holds that Anthony was seized at a different time. But the majority's version of what happened cannot be reconciled with the testimony or the factual determinations actually made by the trial court.

Third, if the trial court omitted a necessary finding concerning exactly when Billingslea smelled the marijuana—before or after seizing Anthony and the truck—a remand is required. Fact finding is solely the province of the trial court, and Billingslea's credibility is at the center of this case. Rather than crediting one version of Billingslea's testimony, I would remand to allow the court to perform its fact-finding function.

I

Billingslea testified at a suppression hearing that he initiated a criminal investigation when he spotted a Ford pickup truck parked "in the middle" of a residential street, "impeding vehicular traffic." That the allegedly improper parking triggered the seizure is beyond dispute:

> *The Court*: If I may ask you a couple questions. How was it impeding traffic? When you say it was impeding traffic, where was - -
>
> *The Witness*. It was in the middle of the street.
>
> *The Court*: Okay. And then it was investigated. While he was being investigated, he was taken out of the vehicle. Did the vehicle right [sic] in the middle of the street?
>
> *The Witness*: Yes.
>
> *The Court*: Until he was arrested?
>
> *The Witness*: Yes.
>
> *The Court*: Then the vehicle was impounded?
>
> *The Witness*: That's correct.
>
> *The Court*: And that was [sic] initial reason you approached the vehicle, correct?
>
> *The Witness*: Yes.
>
> *The Court*: *At that point, was it your opinion that it was a ticket-able offense and the Defendant at that time was not free to leave?*
>
> *The Witness*: *Yes.* [Emphasis added.]

Billingslea repeated his claim that the Ford was illegally parked at least six times during the hearing, even after viewing the video evidence refuting it:

*Q.* And what . . . was [sic] your duties that day that brought you to that particular area?

*A.* I was just [on] routine patrol. I observed a vehicle impeding vehicular traffic.

\* \* \*

*Q.* And when you say you see [sic] a vehicle, what did you say it was doing?

*A.* Impeding vehicular traffic in the middle of the street.

\* \* \*

*Q.* When you approached the vehicle itself, what was the first reason you were investigating the blue F150?

*A.* For the civil infraction, being in the street, the middle of the street.

*Q.* And that progressed into - - is that how it progressed into the smelling of marijuana?

*A.* Right, further investigation.

\* \* \*

*Q.* But you're sure the vehicle was in the middle of the street?

*A.* Yes.

\* \* \*

*Q.* And it is your testimony, that's your definition of parked in the middle of the street, that picture we're seeing?

*A.* Yes, sir.

\* \* \*

*The Court*: Sir, is it your testimony that the car was in the middle of the street?

*The Witness*: Yes.

Billingslea described that he pulled up close to the truck ("no more than five feet") and admitted that he effectuated a "traffic stop" due to the "impeding." Billingslea further admitted at that point, Anthony "was not free to leave." Billingslea agreed that he told Anthony, "I'm stopping you for impeding traffic."

These facts and admissions answer the legal question at the center of this case: when were Anthony and the vehicle seized? Billingslea testified and the trial court found that the seizure occurred when Billingslea initiated his investigation of the phantom traffic violation. The majority conjures a trio of "possible points" for the seizure, spilling copious ink discussing each. The majority's ruminations are both unnecessary and disingenuous. We have the answer. Billingslea testified at least twice that he launched his *Terry*–stop and approached the vehicle because it was impeding traffic. And it should go without saying that all such stops must be justified at their inception. If they aren't, their fruits are inadmissible. See *People v Shabaz*, 424 Mich 42, 65; 378 NW2d 451 (1985) ("Because the seizure of the defendant was unreasonable, in not meeting the requirements of a *Terry* stop, any evidence derived from that seizure must be suppressed as fruit of the poisonous tree.").

The trial court summarized that the purpose of the hearing was to determine whether the stop was pretextual. It found that it was, ruling that the police conducted an "investigative stop" despite that the truck was parked legally and not in the "middle of the street." Here is a photo from the recording:



Remember, the truck is the vehicle that Billingslea consistently maintained was parked "in the middle of the road," despite that another car is parked across the street and the police car evidently had no difficulty navigating between them. The police car had dash cam footage available that might have clarified this picture, but it was not introduced based on the prosecutor's representation that it possessed "no evidentiary value."

Billingslea recounted that after encountering the truck blocking the street, his partner pulled their police car right next to the truck to further investigate this "civil infraction." The cars faced in opposite directions, as the photo shows. Billingslea offered conflicting versions of what happened next. He averred that he smelled the "burnt odor of marijuana" emanating from a "cracked" window of the pickup after seizing the vehicle and approaching it. He alternatively claimed that he smelled the marijuana from his seat in the patrol car, which was separated from the pickup by the body of his partner seated on the driver's side.

The majority characterizes Billingslea's testimony regarding the marijuana smell as "undisputed" and insists that it has made no factual findings but "merely describ[ed] the circumstances as reflected in the undisputed evidentiary record." Billingslea was the only witness who testified at the hearing, and in one sense his testimony was "undisputed." But the majority ignores the trial court's explicit finding that Billingslea was not a credible witness. The trial court disbelieved Billingslea's testimony and rendered factual findings that directly contradicted it.

The pickup truck's location was not Billingslea's only truth challenge. Billingslea changed the details of his story whenever he needed to. He testified at the preliminary examination that he was 10 feet from the pickup when he smelled the marijuana; at the suppression hearing, he revised that to five feet. When this discrepancy was pointed out to him, he opted for five feet. He testified that he approached the truck only because of the parking violation and not because of any smell, but altered that testimony, too, when prodded by the prosecutor. Confronted with video showing that the truck's tinted driver's window was fully closed, Billingslea offered that he "could have possibly rolled the windows up" when the vehicle was towed. And counsel highlighted that although Billingslea allegedly smelled "burning" marijuana, there was no marijuana burning in the truck—just some ashes "and like a roach" in a cup holder that the police never bothered to test.

In short, Billingslea's testimony was all over the place.

Judge Cusick's bench opinion encapsulates a core finding that Billingslea had not accurately described what happened at the scene and that the police lacked reasonable suspicion to seize the truck. I quote it in full because it reflects that the court carefully reviewed the evidence and, contrary to the aspersions cast by the majority, knew exactly what it was doing when it suppressed the fruit of the search:

> Okay. Thank you. The Court heard testimony today in the evidentiary hearing in this case, in People v. Robert Elijah Anthony. The Court heard from one witness, Richard Billingslea, an officer in the Detroit Police Department. He indicated that on August 30th of 2016, in the area of 6304 Bluehill in the city of Detroit, he saw a vehicle that was in the middle of the street impeding traffic. He indicated this was a ticket-able offence.

> He said that there was a window that was cracked. The windows were tinted. He approached the vehicle, and there was a strong odor of marijuana. He ordered the Defendant out of the vehicle and placed - - the Defendant was arrested after a search of the vehicle showed that there was a firearm under the driver's seat floorboard of the car.

> There was also a passenger in the backseat of the car. The Defendant was in the front driver's seat of the car.

> The statement is an interest in the prevention and detection of a crime. In securing that interest, a police officer may, in order to investigate circumstances which give him or her reason to suspect that a criminal activity might be afloat

-5-

[sic] forcibly detain an individual for a brief period of time and may direct questions to that individual, although answers may not be compelled.

The level of cause for an investigative encounter is a reasonable suspicion. That's [*People v Tooks*, 403 Mich 568; 271 NW2d 503 (1978)], and this is based on the orginal case, [*Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)] as well as [*People v Gracey*, 393 Mich 31; 222 NW2d 757 (1974)].

For an investigative stop, there needs to be reasonable suspicion that criminal activity is afoot. A detention for Fourth Amendment purposes occurs when an individual's freedom to walk away has been restrained by a governmental official. In determining whether a force-able stop occurred, a Court must gauge the surrounding circumstances using the following measure: A seizure occurred if a reasonable person innocent of any crime would have believed that he or she was not free to leave. That's [*Terry*] along with [*Brower v Inyo Co*, 489 US 593; 109 S Ct 1378; 103 L Ed 2d 628 (1989)]. A seizure occurs if a reasonable person innocent of any crime would have believed that he or she was not guilty.

The Fourth Amendment is not implicated when an officer simply approaches an individual and directs questions to that person; that is a traditional police/citizen encounter.

The Court has heard the testimony of the officer. He indicated the cause of the stop. The cause of the intention [sic] was impeding traffic. At that time, it is clear that based on what the officer testified to that the - - he believed that it is a ticket-able offense for impeding traffic, and at that point, a reasonable person would not feel free to leave at that point. And so Fourth Amendment activity, the Court finds did occur when the officer approached the vehicle.

Now, the officer says specifically - - he said on a number of occasions the vehicle was in the middle of the street and he implicated that it was impeding traffic, and that would have to be the basis for the detention that occurred.

The officer did indicate that there was residue of marijuana in the cup holder. He said it was 100 percent marijuana. That's not really relevant for the purposes of this case. What I - - when I look at the video in People's Exhibit 1, that vehicle is not in the middle of the street. It looks to me like it's on the other side of the street. It certainly is not in the video in the middle of the street. The police car is in the middle of the street.

Based on what this Court's already indicated, that would be pretext for the stop if the car would be in the middle of the street. In the video in People's Exhibit 1, it does not indicate that in the Court's opinion. So as a result, I believe that there was a violation of the Fourth Amendment pursuant to [*Terry*]. There was not a reasonable suspicion to approach the vehicle and the evidence garnered from the vehicle will be suppressed.

This brief opinion incorporates: (1) a full and fair summary of Billingslea's testimony; (2) an accurate summary of the central rule of *Terry*: "The level of cause for an investigative encounter is a reasonable suspicion;" (3) an accurate summary of the law regarding seizures of a person; (4) an accurate observation that "The Fourth amendment is not implicated when an officer simply approaches an individual and directs questions to that person; that is a traditional police/citizen encounter;" (5) a factual finding that the "cause" of the stop was "impeding traffic;" (6) a mixed finding of fact and law that Anthony was seized when the officer approached the vehicle; (7) a legal conclusion that the presence of marijuana was not "relevant;" (8) a factual finding that Anthony's car "certainly is not in the video in the middle of the street," and (9) a legal conclusion that the officers had no reasonable suspicion justifying an approach (and seizure) of the vehicle. Contrary to the majority opinion, the trial court's analytical approach was not "erroneous as a matter of law," but consistent with governing Fourth Amendment principles.

The majority nit-picks the trial court's opinion, finding minor faults in the court's articulation of the governing law. For example, the majority criticizes the trial court's statement that the marijuana smell was "not really relevant for the purposes of this case." The reason the smell was not relevant to the trial court was because the court—as finder of fact—determined that the reason for the stop was pretextual, and not the smell of marijuana. The majority labors to overcome this finding, insisting that if the truck was legally parked then the officers approached it consensually, just as they would any properly parked vehicle on a public street. Therefore, the majority reasons, it must have been the marijuana that triggered the stop.

But as an appellate court we do not find facts. We do not invent them, either. When it comes to facts, our role is limited to reviewing whether the trial court's view was supported by sufficient credible evidence. When a key fact is missing, we send the case back to the trial court for supplementation. Under no circumstances do we postulate varying scenarios so that we can decide which we like best.

Here, the trial court found Billingslea to be a liar. The trial court—not the majority—saw Billingslea testify. The trial court—not the majority—observed Billingslea's demeanor and the way in which he answered questions. It was the trial court's prerogative to decide whether Billingslea told the truth, not the majority's.

Perhaps the best example of appellate court fact-finding is the majority's holding that Billingslea smelled marijuana *before* getting out of his vehicle, which the majority interprets as probable cause to search Anthony's vehicle regardless of Billingslea's claim that the truck was impeding traffic. The trial court did make the marijuana finding manufactured by the majority. The trial judge was not required to believe any of Billingslea's inconsistent claims about when he smelled the marijuana, and the court's skeptical questioning of Billingslea supports that he did not. Moreover, even though the trial court did not *explicitly* state that the marijuana smell was a fact acquired after the stop and seizure that could not be used to justify it, it is reasonable to assume that the court so found. It is unreasonable to assume, as does the majority, that the trial

court found that the smell preceded the stop, given the trial court's ultimate finding that the stop was pretextual.[1]

The majority's version of events—a legally parked car and two officers who just happened by before smelling marijuana—is even more unreasonable, as it cannot be reconciled with Billingslea's testimony. Rather than accepting that the seizure occurred because of a parking violation as testified to by the only witness and found by the court, the majority reinvents what happened. In the majority's reconstructed replay, this was just a "consensual approach of officers to an individual in a public place."[2] The totality of the circumstances supports the trial court's factual findings to the contrary, as does the law.

II

We have a rule that applies in situations like this: MCR 2.613(C). The rule provides that a trial court's factual findings "may not be set aside unless clearly erroneous," and that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." A fair reading of the judge's bench opinion demonstrates that the judge did not believe Billingslea's asserted reasons for the stop and excluded the evidence on that ground.

Sitting as factfinders, the majority first expresses doubts about Billingslea's concession and the trial court's conclusion that the truck was unlawfully seized when Billingslea stopped next to it and began his approach, and then determines that Billingslea's smelling of marijuana justified the search. The majority ignores that the trial court specifically found that the "cause" of the stop was "impeding traffic," that Billingslea admitted to initiating a stop to investigate "impeding," and that a reasonable person would not have felt free to leave at that point. Read in a common-sense rather than a hypertechnical manner, the trial court expressed its disbelief of Billingslea's reasons for seizing Anthony's truck. It termed those explanations "pretextual." A pretext is a phony or made-up reason. In applying that term to Billingslea's acts, the trial court

---

[1] The Texas Court of Criminal Appeals provides helpful guidance for cases such as this: "[W]e afford almost total deference to a trial judge's determination of the historical facts that the record supports, especially when his implicit factfinding is based on an evaluation of credibility and demeanor." *State v Garcia-Cantu*, 253 SW3d 236, 241 (Tx Ct of Crim App, 2008).

[2] Puzzlingly, the majority draws support for its "consensual approach" theory from *People v Barbee*, __ Mich App __; __ NW2d __ (2018), asserting that *Barbee* instructs that Anthony had "no reasonable expectation of privacy in a parked vehicle on a public street" because "there was no Fourth Amendment implication at all for officers to approach the car and to observe whatever could be discerned from outside it." In *Barbee*, the police looked into a parked car; before doing so, they had not seized the vehicle. Indeed, this Court held that there was not even a *search* of Barbee's car. We explained, "[T]he Fourth Amendment was not implicated and there was no search at the point in time when the police pulled alongside the parked car and observed defendant's movements therein." Here, the seizure of the vehicle preceded its search, and the truck had tinted windows, preventing the officers from seeing inside. How or why *Barbee* advances the majority's argument remains opaque.

-8-

found that the officer had no legally justifiable ground for the search, including a scent of marijuana detected before the detention.

I recapitulate here the critical parts of the court's opinion because the majority utterly ignores these findings:

> The Court has heard the testimony of the officer. He indicated the cause of the stop. The cause of the intention [sic] was impeding traffic. At that time, it is clear that based on what the officer testified to that the - - he believed that it is a ticket-able offense for impeding traffic, and at that point, a reasonable person would not feel free to leave at that point. And so Fourth Amendment activity, the Court finds did occur when the officer approached the vehicle.

Contrary to this clear articulation of a factual finding, the majority determines that the officers were merely "driv[ing] down the street," and did not seize Anthony until after they approached on foot and smelled the marijuana. Perhaps the majority has advanced a reasonable view of the evidence. But where there are two permissible views, and one belongs to the trial court, the trial court's interpretation wins. See *People v Anderson*, 501 Mich 175, 189-190; 912 NW2d 503 (2018).

The majority overreaches again by holding that the trial court failed to "explicitly reach[] a conclusion" about "when" Anthony was seized, permitting the majority to fill in the blanks. The trial court was not as clueless as the majority claims. Here is the trial court's ruling recapped:

> The Fourth Amendment is not implicated when an officer simply approaches an individual and directs questions to that person; that is a traditional police/citizen encounter.

> The Court has heard the testimony of the officer. He indicated the cause of the stop. The cause of the intention [sic] was impeding traffic. At that time, it is clear that based on what the officer testified to that the - - he believed that it is a ticket-able offense for impeding traffic, and at that point, a reasonable person would not feel free to leave at that point. And so Fourth Amendment activity, the Court finds did occur when the officer approached the vehicle.

The trial court found that Anthony was not free to leave when the officer initiated the stop. At that point, Anthony was "seized" and "Fourth Amendment activity" commenced. The majority ignores these inconvenient—but found—facts, substituting its own version on de novo review.[3]

---

[3] At bottom, the majority's "consensual approach" theory conflates facts with law. The majority's error derives from its confusion about the standard of review. Although the majority correctly recites the standard initially, it predicates its legal analysis of when a seizure occurred on a false premise: that "[b]ecause we review the decision whether to suppress evidence de novo, we consider each of the [factual] possibilities." We review de novo the trial court's ultimate ruling as to whether the Fourth Amendment was violated. *People v Williams*, 472 Mich 308,

-9-

The rules that govern our review in this case should be well known. We review for clear error the trial court's underlying factual findings, giving deference to the trial court's resolution. *People v Frohriep*, 247 Mich App 692, 702; 637 NW2d 562 (2001). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). In reviewing the lower court's factual findings, we may not "overstep our review function" and "substitute our judgment for that of the trial court and make independent findings." *Frohriep*, 247 Mich App at 702. As highlighted in *People v Farrow*, 461 Mich 202, 209; 600 NW2d 634 (1999):

> Resolution of facts about which there is conflicting testimony is a decision to be made initially by the trial court. The trial judge's resolution of a factual issue is entitled to deference. This is particularly true where a factual issue involves the credibility of the witnesses whose testimony is in conflict.

Our Supreme Court has said it over and over again: as appellate judges, we are not empowered to make factual findings. See, e.g., *People v Cartwright*, 454 Mich 550, 555; 563 NW2d 208 (1997) ("An appellate court will defer to the trial court's resolution of factual issues, especially where it involves the credibility of witnesses."); *People v Reese*, 491 Mich 127, 159; 815 NW2d 85 (2012) ("[I]t is difficult to escape the conclusion that the [Court of Appeals] panel simply substituted its interpretation of the testimony for the trial court's. This is inappropriate when the standard of review requires an appellate court to accept the trial court's findings of fact unless they are *clearly erroneous*.") (emphasis in original). Citing favorably a quotation from *Zenith Radio Corp v Hazeltine Research*, 395 US 100, 123; 89 S Ct 1562; 23 L Ed 2d 129 (1969), the Michigan Supreme Court observed:

> "In applying the clearly erroneous standard . . . appellate courts must constantly have in mind that their function is not to decide factual issues de novo. The authority of an appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of the fact, who is usually in a superior position to appraise and weigh the evidence." [*Beason v Beason*, 435 Mich 791, 802 n 5; 460 NW2d 207 (1990).]

I find no factual gaps in the trial court's opinion. But if one or more exists concerning marijuana (whether Billingslea actually smelled it and, if so, at what point in the encounter), we should ask the trial court to resolve any unresolved fact questions instead of making our own findings. The majority's approach is unprecedented and dangerous. It opens the door to casting aside the thoughtful and well-reasoned opinions of jurists who heard and saw witness testimony in favor of this Court's opinion about the facts the trial judge *should* have found. It allows for fact-finding on a cold record, without benefit of an opportunity to evaluate credibility. The

---

313; 696 NW2d 636 (2005). But the *facts* underlying that ruling are subject to review for clear error, and the facts have already been found. Here, the officer testified that he initiated a stop based on "impeding," not marijuana, and the court so found. Billingslea testified that at the point he approached the vehicle to ticket it for impeding traffic, Anthony was not free to leave. Until the majority embarked on its mission to rewrite the facts, no one ever challenged that Anthony's freedom of movement was restrained at the outset of the "investigation."

majority's ruling reflects the opposite of deference and contravenes the rules regulating our review.

III

The majority compounds its improper usurpation of the trial court's role by likening the officers' conduct to a simple visit made in passing on a public street. Of course officers may "freely approach citizens on the street without implicating the Fourth Amendment[,]" as the majority points out. But that is a far cry from what happened here.

The officers were neither on foot nor simply passing by when the events at issue occurred. Rather, Billingslea and his partner deliberately pulled up closely alongside Anthony's pickup truck, impeding the truck's ability to move. First, there was a garbage can behind the truck, as the video depicts. Second, Billingslea testified that the officers were there to investigate an infraction. Third, Billingslea admitted that Anthony was not free to leave when he approached the vehicle. It borders on ludicrous to conclude that Anthony could have driven away when the police vehicle pulled up next to him and two uniformed officers got out. Given that Billingslea had decided that the truck was illegally blocking traffic, that he exited his marked car to investigate the "impeding," and that the officers had positioned the car as shown in the video, what is the likelihood that the officers would have permitted Anthony to simply turn on his ignition, wave goodbye, and leave the scene?

This was not a routine encounter. The police parked as they did because they intended to prevent Anthony from moving the truck. They effectuated this goal by positioning their cruiser in a manner that made Anthony's escape from the situation perilous at best, and impossible at worst. This was a "seizure" from the moment the police stopped right next to the pickup. And that is exactly what the trial court found.

The majority's sweeping pronouncement that there was no traffic stop because "the F-150 was parked and thus not moving" also merits a response. First, Billingslea himself used the term "stop," stating, "The cause for the stop was initially [impeding traffic]." The federal Court of Appeals for the Third Circuit refutes the majority more cogently:

> The District Court expressed incredulity at the idea that a police officer can conduct a "traffic stop" of a parked car. However, the court seems to conflate a "stop" for Fourth Amendment purposes with a stop in common parlance. But this concern is of no moment, as even the common, non-legal definition of the verb "to stop" describes the transitive verb as, inter alia, "to hinder or prevent the passage of[,]" "to get in the way of[,]" "to close up or block off[,]" and the intransitive verb as, inter alia, "to cease to move on[.]" See Stop, *Merriam Webster*, https://www.merriam-webster.com/dictionary/stop.
>
> Here, the officers requested that the engine be turned off, thereby preventing it from re-entering the roadway. Simply because officers did not pursue the vehicle or pull the vehicle over does not render that vehicle incapable of being "stopped," in common parlance, or from seizure for Fourth Amendment purposes. [*United States v Hester*, ___ F3d ___ (CA 3, 2018), slip op at 8 n 4.]

-11-

And so does the Sixth Circuit. See *United States v Carr*, 674 F3d 570, 572 (CA 6, 2012) ("Carr's encounter with the officers occurred in three stages: the parking of the police vehicle, the officers' approach on foot, and Carr's exit from his vehicle."). As does the Ninth. See *United States v Choudhry*, 461 F3d 1097, 1098 (CA 9, 2006) ("[W]e conclude that the parking violation provided the officers with reasonable suspicion to conduct an investigatory stop of the vehicle.").[4]

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v Bostick*, 501 US 429, 439; 111 S Ct 2382; 115 L Ed 2d 389 (1991). This is, inherently, a fact-based test. *Michigan v Chesternut*, 486 US 567, 573; 108 S Ct 1975; 100 L Ed 2d 565 (1988). "Stopping and detaining an automobile and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment, even if the purpose of the stop is limited and the resulting detention is brief." *People v Williams*, 236 Mich App 610, 612 n 1; 601 NW2d 138 (1999), citing *Delaware v Prouse*, 440 US 648, 653; 99 S Ct 1391; 59 L Ed 2d 660 (1979). "A seizure which triggers the protections of the Fourth Amendment occurs when, under the circumstances, a reasonable person would have believed that he was not free to leave." *People v Sinistaj*, 184 Mich App 191, 195; 457 NW2d 36 (1990), citing *United States v Mendenhall*, 446 US 544; 100 S Ct 1870; 64 L Ed 2d 497 (1980); *People v Shabaz*, 424 Mich 42, 66; 378 NW2d 451 (1985).

There is no record indication that the officers were "merely approaching an individual" in public to "ask[] him if he [was] willing to answer some questions. . . ." *Florida v Royer*, 460 US 491, 497; 103 S Ct 1319; 75 L Ed 2d 229 (1983). While the officers had a "right" to be there, as the majority contends, this was an investigatory stop to pursue Anthony's "crime": parking his truck in a manner that impeded traffic. Billingslea never claimed that he intended only to ask Anthony to move his truck or to explain his activities. Rather, Billingslea specifically and repeatedly asserted that Anthony was illegally parked and that the officers were stopping in order to investigate the violation. The trial court found that they initiated a seizure, as "a reasonable person would not feel free to leave at that point." That determination was not clearly erroneous; the video and Billingslea's testimony back it up. The majority's effort to paint a different picture defies the law and the evidence.

---

[4] The majority's invocation of *Carr* for the proposition that Anthony's car was not truly seized is both perplexing and misguided. In *Carr*, three officers in an unmarked police car parked 12 feet away from the defendant's vehicle, which was parked in a stall of a coin-operated carwash. The Court found it particularly significant that the defendant could have driven forward past the police car or backed out of the carwash bay, quoting an officer's statement that there was "ample room to steer and maneuver around our vehicle." *Carr*, 674 F3d at 572. Two other Sixth Circuit cases supply more apt comparisons: *United States v See*, 574 F3d 309, 312-313 (CA 6, 2009), and *United States v Gross*, 662 F3d 393, 399-400 (CA 6, 2011). In both cases, the police positioned their vehicles so as to curtail a suspect's ability to drive away. The trial court here found that in light of the circumstances, when Billingslea initiated the stop "a reasonable person would not feel free leave at that point."

Whether a police officer has reasonable suspicion to detain a citizen depends on the totality of circumstances, "the whole picture." *United States v Cortez*, 449 US 411, 417; 101 S Ct 690; 66 L Ed 2d 621 (1981). The trial court saw part of "the whole picture" on the video and heard Billingslea describe the rest. After viewing images that directly contradicted the testimony, the trial court decided that it simply did not buy what Billingslea was selling, and ruled the stop a pretext. I would hold that the record supports the trial court's findings and ruling and would affirm.

/s/ Elizabeth L. Gleicher