# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

              Plaintiff-Appellee,

v

KEENAN BARBEE,

              Defendant-Appellant.

FOR PUBLICATION
June 26, 2018
9:00 a.m.

No. 337515
Wayne Circuit Court
LC No. 16-006428-01-FH

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

MURPHY, P.J.

In a bench trial, defendant was convicted of felon in possession of a firearm, MCL 750.224f, felon in possession of ammunition, MCL 750.224f, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and carrying a concealed weapon (CCW), MCL 750.227. He was sentenced to one to five years' imprisonment for each of the convictions, except for the felony-firearm conviction, for which he was sentenced to two years' imprisonment. We affirm.

Shortly after midnight on July 8, 2016, police officers on routine patrol in a marked cruiser observed a parked car with its engine running and headlights on, and the officers pulled alongside the driver's side of the vehicle. The officers shined their flashlights at the car, observing that a female was behind the wheel and that defendant was sitting in the front passenger seat. There was police testimony that defendant looked shocked and leaned back in his seat, appearing to pull something out from his waist area with his right hand, followed by defendant leaning forward as if he were attempting to place something on the floor under his seat. The officers found the movements suspicious, leading the police to believe that defendant may be armed. When one of the officers exited the police cruiser, defendant immediately jumped out of the passenger seat and car, holding a stack of money. Upon defendant being detained, an officer went to the passenger side of the car, shined his flashlight inside the vehicle at the floorboard, and observed the back of a gun handle partly under the seat, giving rise to an inference, considering defendant's movements, that he had put the firearm in that spot in a frantic attempt to conceal it under the seat. The gun was seized, and defendant was arrested. Defendant testified that he had no knowledge that the gun was in the car, that he had never possessed the weapon on his person, that he did not see the gun in the vehicle, and that he did not own the firearm.

-1-

At the bench trial, defense counsel attempted to argue that evidence of the gun should be suppressed, considering that the officers lacked probable cause to stop and search the vehicle; however, the trial court refused to consider the argument, as counsel had failed to challenge the search and seizure in a pretrial motion. On appeal, defendant argues that defense counsel was ineffective for not filing a pretrial motion to suppress the firearm and that there was insufficient evidence to support the convictions. We disagree.

With respect to the claim of ineffective assistance of counsel, defendant argues that the car was lawfully parked in front of his home, that he and the female driver were quietly saying goodnight, that they had an expectation of privacy, that there was no indication by the officers that the neighborhood was rampant with criminal activity, and that "the police did not provide a single reason for coming up on defendant's car so clandestinely and shining their flashlights into it[.]" Defendant contends that the plain view doctrine could not be invoked, because the doctrine requires that an officer be in a place where he or she had a right to be, and the police in the instant case had no right to pull up within a couple feet of the car and then shine their flashlights inside. Defendant maintains that the officers needed to have some articulable suspicion of criminal activity being afoot to proceed as they did, and there was none. Defendant appears to accept that a police officer may generally, but not always, utilize a flashlight, but only if the officer was rightfully and lawfully positioned when doing so.

Defendant makes clear that his argument is not that his movements, i.e., leaning back, appearing to pull something from his waist area, and then leaning forward as if to put something under the seat, did not give rise to probable cause or reasonable suspicion to temporarily detain him, nor does he appear to contend that it was improper to shine the flashlight on the passenger side floorboard where the gun was found. Rather, the entire premise of defendant's argument is that it was unconstitutional for the police to be in the position from which they initially saw defendant's movements; therefore, counsel was ineffective for not filing a pretrial motion to suppress the gun.

Defendant's argument is couched, at least in part, in terms of the plain view doctrine, and in *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996), the Supreme Court observed:

> The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent. A fundamental characteristic of the doctrine is that it is exclusively a seizure rationale. No searching, no matter how minimal, may be done under the auspices of the plain view doctrine. [Citations omitted.]

As can be gleaned from this passage, the plain view doctrine is not technically applicable to the specific argument being made by defendant. Defendant's argument is more akin to cases involving whether the police can gather incriminating information from a particular vantage point to then justify a search or search warrant based on the information, or whether police conduct at that vantage point in gathering the information is itself a search implicating Fourth Amendment protections. We are addressing an argument that falls under what has been coined the "open view doctrine." In *State v Clark*, 124 Idaho 308, 311-313; 859 P2d 344 (1993), the Idaho Court of Appeals gave the following helpful explanation:

Both parties here urge application of a "plain view" analysis. . . . However, we conclude that the plain view doctrine is not the proper framework for analysis of [the officer's] . . . observation through the [mobile home's] corner window, for the plain view doctrine addresses the validity of warrantless *seizures,* not searches.

[The] United States Supreme Court [has] clarified that the plain view doctrine is a constitutionally recognized justification only for warrantless seizures, not warrantless searches[.]

\* \* \*

[T]he plain view doctrine refers only to the circumstances where an officer has a prior justification for an intrusion into a constitutionally protected area or activity and in the course of that intrusion spots and seizes incriminating evidence. . . . Accordingly, it is warrantless *seizures* of readily visible items, not warrantless *searches,* that are limited by the criteria delineated under the plain view doctrine.

The validity of a law enforcement officer's mere observation of objects or activities requires a different analysis. If the officer intruded into an area where a privacy interest exists in order to gain the view, the intrusion must be justified by one of the recognized exceptions to the warrant requirement. However, a policeman's mere observation from a vantage point that does not infringe upon a privacy interest, of something open to public view, normally implicates no Fourth Amendment constraints because observation of items readily visible to the public is not a "search." . . . What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.

This Court and others have used the term "open view doctrine" to refer to this rule that no Fourth Amendment "search" occurs where a law enforcement officer observes incriminating evidence or unlawful activity from a non-intrusive vantage point. *State v Ramirez*, 121 Idaho 319, 322; 824 P2d 894 (Idaho App, 1992) (officer's view into a car in a public parking lot) . . . . The "open view" terminology distinguishes the analysis applicable to warrantless observations from the legally distinct "plain view" doctrine applicable to seizures.

The open view analysis must be applied to determine whether [the officer's] view through the corner window was an unreasonable search prohibited by the Fourth Amendment. . . . If his vantage point was not within a constitutionally protected area, his observation using only his normal vision to see that which was open to public gaze, was permissible under the open view doctrine. [Citations and quotation marks omitted.]

The Idaho court relied in part on *Texas v Brown,* 460 US 730, 739; 103 S Ct 1535; 75 L Ed 2d 502 (1983), wherein the United States Supreme Court indicated that the plain view doctrine provides a basis to seize an item when the officer's access to the object had some

previous justification under the Fourth Amendment. The Court cautioned that it is important to distinguish "plain view" justifying a seizure of an object from an officer's observation of an item left in plain or open sight, the latter of which does not involve a Fourth Amendment search. *Id.* at 739 n 4. The information gleaned as a result of observation of an object in plain or open sight can form the basis of probable cause or reasonable suspicion to proceed further. *Id.* The concept of open view was noted recently by our Supreme Court in *People v Frederick*, 500 Mich 228, 237 n 4; 895 NW2d 541 (2017):

> For example, looking into the windows of a home from a sidewalk or other public area is not a search. But it *is* information-gathering, such that, if the police trespass on the home's curtilage and peer through the windows from that vantage point, they have conducted a search. The trespass converts conduct that would not otherwise constitute a search into a search.[1]

Accordingly, the more precise question here is whether the police conducted a search that implicated Fourth Amendment protections by simply pulling up to the vehicle in which defendant was a passenger and observing movements taking place inside the car aided with flashlights. Stated otherwise, the issue is whether defendant's movements inside the car were in "open view." In turn, as explained below, the analysis requires a determination whether defendant had a reasonable expectation of privacy or whether the officers' conduct constituted a trespass for purposes of information gathering.

In *Frederick*, 500 Mich 228, the Michigan Supreme Court examined whether police conduct amounted to permissible "knock and talks" or warrantless searches in violation of the Fourth Amendment, where police made early morning unscheduled visits to the two defendants' homes, obtained consents to search, and discovered marijuana-related products in each home. The Court held:

> Because these knock and talks were outside the scope of the implied license [to go up to a house and knock on a door], the officers trespassed on Fourth-Amendment-protected property. And because the officers trespassed while seeking information, they performed illegal searches. Finally, because of these illegal searches, the defendants' consent—even if voluntary—is nonetheless invalid unless it was sufficiently attenuated from the illegality. [*Id.* at 244.]

As part of the analysis, the *Frederick* Court acknowledged the decision in *Florida v Jardines*, 569 US 1; 133 S Ct 1409; 185 L Ed 2d 495 (2013), where the police went to the front door of a house with a trained police dog who explored the area and alerted officers of the smell of drugs, which information was then used to obtain a search warrant. *Frederick*, 500 Mich at 234-236. Our Supreme Court noted that the *Jardines* Court held that introducing a trained police dog to explore around the outside of a home in hopes of discovering incriminating information

---

[1] See also *Florida v Riley*, 488 US 445; 109 S Ct 693; 102 L Ed 2d 835 (1989) (examining whether officer's observation of partially covered greenhouse in a backyard from the vantage point of a helicopter was a search under the Fourth Amendment).

went beyond any customary invitation typically applicable to a limited licensee (knock promptly, wait briefly for response, and then leave unless invited to linger longer), thereby trespassing on protected property under the Fourth Amendment. *Frederick*, 500 Mich at 236. The *Frederick* Court observed that the rule emanating from *Jardines* is that a trespass plus an attempt to gather information constitutes a search and thus implicates Fourth Amendment protections. *Id.* Our Supreme Court also noted that the expectation-of-privacy analysis for purposes of the Fourth Amendment set forth in *Katz v United States*, 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), along with the property-rights or trespass analysis pertaining to the Fourth Amendment, are both part of Fourth Amendment jurisprudence subject to consideration. *Frederick*, 500 Mich at 235 n 2.

We hold that there was no reasonable expectation of privacy by defendant relative to his movements in the car parked on a public street and that there was no trespass by the police when they pulled up to the vehicle and looked inside. Therefore, the Fourth Amendment was not implicated and there was no search at the point in time when the police pulled alongside the parked car and observed defendant's movements therein. There plainly was no trespass, and defendant, while arguing that the officers' conduct was intrusive, makes no claim of a trespass. Defendant does maintain that he and his female companion had a reasonable expectation of privacy. We disagree. In *Brown*, 460 US at 740, the United States Supreme Court ruled:

> [T]he fact that [the officer] changed his position and bent down at an angle so he could see what was inside Brown's car . . . is irrelevant to Fourth Amendment analysis. The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason [the officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. In short, the conduct that enabled [the officer] to observe the interior of Brown's car and of his open glove compartment was not a search within the meaning of the Fourth Amendment. [Citations, quotation marks, and alteration brackets omitted.[2]]

Accordingly, we conclude that defendant did not have a reasonable or legitimate expectation of privacy in the vehicle that was parked on a public street. To the extent that

---

[2] See also *State v Harris*, 98 Ohio App 3d 543, 547; 649 NE2d 7 (1994) (a person generally has no reasonable expectation of privacy in a public area, as there is always a risk that others will see things in open view, and while a defendant "may have a subjective expectation of privacy in his car while parked in a business lot, it is not one which this court, or more importantly society is prepared to recognize as reasonable") (quotation marks omitted); *State v Ramirez*, 121 Idaho 319, 322; 824 P2d 894 (1991) (car located in the parking lot of a bar is readily subject to observation by members of the public, and there exists no cognizable right to privacy in that portion of the vehicle's interior that may be viewed from outside the car by either an inquisitive passersby or a diligent police officer).

defendant's argument encompasses employment of the flashlights by the officers, it is unavailing. See *Brown*, 460 US at 740 ("Numerous . . . courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection."); *People v Custer (On Remand)*, 248 Mich App 552, 562; 640 NW2d 576 (2001) (if a police officer's observation would not have constituted a search had it taken place in the daylight, then the fact that the officer used a flashlight to see through the nighttime darkness does not transform any observation into a search).[3]

In sum, because filing a pretrial motion to suppress the gun would have been futile, defense counsel was not ineffective, as counsel is not required to file meritless or futile motions. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

Defendant next argues that there was insufficient evidence to prove beyond a reasonable doubt that he had ever possessed the gun. Again, we disagree. Viewing the direct and circumstantial evidence in a light most favorable to the prosecution, *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), adhering to the principle that we must not interfere with the trier of fact's role in assessing the weight of the evidence and the credibility of the witnesses, *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), appreciating that circumstantial evidence and reasonable inferences arising from such evidence can constitute satisfactory proof of an element of a crime, *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), including firearm possession, *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011), and resolving all conflicts in the evidence in favor of the prosecution, *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), we hold that there was sufficient evidence for the trial court to find beyond a reasonable doubt that defendant possessed the gun.[4]

Despite the lack of any direct evidence that defendant physically possessed the gun, we hold that there existed sufficient circumstantial evidence from which it could be reasonably inferred that defendant had actually possessed the gun before and at the time the police pulled up next to the vehicle in which defendant was a passenger. See *People v Minch*, 493 Mich 87, 91;

---

[3] Although defendant's argument does not reach the issues, we find that defendant's suspicious movements inside the car justified, minimally, a brief *Terry* detention for purposes of investigating the possibility of criminal activity being afoot. *People v Custer*, 465 Mich 319, 326-327; 630 NW2d 870 (2001), citing *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). And the officer's observation of the back of the gun handle was from a lawful position regardless of the use of the flashlight, *Custer*, 248 Mich App at 562, thereby implicating, at this juncture, the plain view doctrine, *Champion*, 452 Mich at 101, allowing for the seizure of the gun.

[4] "Possession" is an element of felon-in-possession, MCL 750.224f; *People v Bass*, 317 Mich App 241, 268; 893 NW2d 140 (2016), and felony-firearm, MCL 750.227b; *People v Peals*, 476 Mich 636, 640; 720 NW2d 196 (2006); *Johnson*, 293 Mich App at 82-83, and the "carrying" element of CCW has been equated to possession, *People v Butler*, 413 Mich 377, 390 n 11; 319 NW2d 540 (1982).

825 NW2d 560 (2012) (possession of a firearm can be either actual or constructive).[5] The police testimony describing defendant's suspicious movements and his startled appearance when the officers stopped, his conduct in immediately jumping out of the vehicle, and the discovery of the weapon part way under the passenger seat, which location would be consistent with the nature of defendant's movements that suggested he had placed something under his seat, gave rise to a reasonable inference that defendant had physically handled and possessed the firearm. The evidence was sufficient to support the verdicts.

Affirmed.

/s/ William B. Murphy
/s/ Amy Ronayne Krause

---

[5] It appears from the trial court's written opinion and comments from the bench that the court found that defendant had actually possessed the gun, absent any reliance on constructive possession.