*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DOUGLAS TYLER LONE,

        Defendant-Appellant.

UNPUBLISHED
September 29, 2022

No. 359140
Ingham Circuit Court
LC No. 20-000485-FH

Before: K. F. KELLY, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of aggravated possession of child sexually abusive material, MCL 750.145c(4)(b), using a computer to commit a crime, MCL 752.796, and felon in possession of a firearm (felon-in-possession), MCL 750.224f. As a habitual offender, third offense, MCL 769.11, defendant was sentenced to 159 to 240 months' imprisonment for aggravated possession of CSAM, 100 to 240 months' imprisonment for using a computer to commit a crime, and 57 to 120 months' imprisonment for felon-in-possession. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from the downloading of child sexually abusive material (CSAM) containing images of children and animals. Google employees determined that child pornography was downloaded to a Google account and reported the information to the National Center for Missing and Exploited Children, a nonprofit organization that works with technology companies and the public to report child pornography and related internet crimes to law enforcement. The nonprofit's cyber tip was investigated by Michigan State Police Detective Thomas Gladney, an expert on the "BitTorrent network and child pornography." Detective Gladney testified that an internet service provider gave the subscriber's home a unique internet protocol (IP) address. IP addresses essentially act like a phone number for a location with internet access, and every device within the home typically uses the assigned IP address. Google keeps a meticulous record of every e-mail account that is created and accessed on their infrastructure as well as the IP address from which the access occurred. Google also offers different services, including Google drive that

-1-

provided for cloud storage of documents and photographs from many different devices. This feature could be set up automatically, meaning a picture taken on an individual's cell phone would, as a matter of course, be backed up to the Google drive.

Through the organization charged with keeping track of IP addresses, the Google e-mail account owner, the phone number, and the execution of search warrants, Detective Gladney determined that defendant was the owner of the Google e-mail address that downloaded CSAM. Through the IP address, the detective was able to correlate the account to defendant's residence on Solomon Drive. Google also provided IP addresses that corresponded to the Holiday Inn Hotel in Jackson, Michigan between November 5 and 13, 2019. Child pornography was also downloaded through defendant's e-mail account from the Holiday Inn IP addresses, and the detective confirmed that defendant was a registered guest of the hotel during that time period.

Through a search warrant, Detective Gladney was given a complete copy of the contents of defendant's Google drive and found CSAM. He testified that such material was "essentially synonymous with child pornography;" it consisted of both pictures and videos of individuals under the age of 18 engaged in sex acts. Detective Gladney received training to identify pre or post pubescent individuals by examining areas such as the chest, genitals, and armpits as well as height, size, and overall appearance to detect the stage of growth or development. He opined that the files found on defendant's Google drive consisted of CSAM,[1] and he stop counting once he found more than 50 photos or videos.

As a result of his investigation, on May 19, 2020, Detective Gladney executed a search warrant on defendant's home residence seeking items that stored digital data such as flash drives, cell phones, and computers. Defendant and his live-in girlfriend were present during the search and secured. The search uncovered a gun holster and magazines containing ammunition in the master bedroom. The actual gun was recovered in the bedroom occupied by defendant's seven-year-old son, although the child was not present during the search warrant execution.[2]

Defendant waived his *Miranda*[3] rights and agreed to speak with Detective Gladney. Defendant admitted that he lived in the home with his girlfriend, and he had an iPhone and iMac computer. Defendant gave three emails addresses that he used and admitted that he performed contract work at the Holiday Inn in Jackson sometime before Christmas. Defendant acknowledged that he accessed his Google drive account the day before the search warrant execution but denied seeing any child pornography there. Defendant claimed that he only watched "just normal pornography." After being apprised of the detective's knowledge acquired through the course of the investigation, defendant admitted that he downloaded child pornography from different

---

[1] It was also evident from the names of the files or videos that they contained prepubescents.

[2] To the detective, defendant initially denied that there was a gun in the home and admitted that he was not allowed to possess a firearm. He later stated that family members brought a firearm and magazines to his home, but he believed they took it with them.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

internet websites, that the downloads occurred on his cell phone while he was in his home, and that he masturbated while watching the child pornography.[4]

Defendant's now former live-in girlfriend testified that the couple resided together in the Solomon Drive home. Defendant's minor child sometimes lived with them.[5] The girlfriend delineated the sleeping arrangements in the home, the location of various computers and electronic devices, and the predominant and shared users of the electronics. She also testified that defendant had his own business performing home renovations. Sometimes he was required to work overnight, and she admitted that he stayed at a hotel in Jackson because of work around Halloween. While the girlfriend also admitted that she downloaded and watched pornography, she asserted that it was merely mainstream pornography and did not involve children. She also testified that she never downloaded any pornography to defendant's cell phone or his Google drive. The girlfriend did not learn of the full extent of the type of pornography defendant viewed until after the search warrant execution. Before that, she once found a flash drive with "concerning things" on it. The girlfriend destroyed the flash drive a couple of months before the execution of the search warrant. She asked defendant about its contents, and he told her that the material was not what he intended to download. Defendant admitted the flash drive was his and that he was aware of its content.

Following additional police testimony addressing the investigation and execution of the search warrant, the prosecutor rested. Defense counsel moved for dismissal of the charge of using a computer to commit a crime, citing the prosecutor's failure to demonstrate that defendant accessed a computer on May 19, 2020; rather the proofs indicated that any content had been on defendant's devices for several months. The prosecutor countered that the statute did not require active use of a cell phone on a particular date, but rather that the content was in defendant's possession. Alternatively, the prosecutor sought to amend the information to reflect the time period during which defendant admitted to usage; specifically, defendant admitted to the detective that he used the phone the day before the execution of the search warrant. The trial court denied the motion to dismiss the count of using a computer to commit a crime and allowed the prosecutor to amend the information pertaining to that count to allege May 18 and 19, 2020.

---

[4] Indeed, extractions were performed on a silver Apple iPad and defendant's red Apple iPhone and CSAM was found on both devices. Photos and videos featuring defendant and photographs of the firearm dated March 5, 2020, were found on defendant's iPhone. There were more than 50 files of CSAM on defendant's phone. The videos found on this device had titles that indicated they involved minors or pedophilia. In two videos, a minor female was sexually assaulted by an adult male. There was also a sexual assault video that involved a dog. One of the videos was last accessed on January 16, 2020. Defendant reported that he merely accessed an application that provided a web address. But Detective Gladney testified that the cloud containing the storage of files of CSAM did not download automatically to the electronic device, but rather, the viewer had to download the file individually to the device.

[5] She testified that a family friend briefly lived with the couple for approximately two months but he had since died.

Defendant admitted[6] that he answered questions for Detective Gladney, but he denied ever stating that he masturbated or pleasured himself "sexually to any of the material that was on those drives." Rather, defendant testified that he was sexually abused as early as nine months old. He did not use the pornography to fulfill any sort of sexual desire but to understand "what's going on with [his] own psyche." Defendant understood that the enforcement against such content was to protect children, but he did not intend to harm children.

On cross-examination, defendant admitted to the ownership of the iPhone and the e-mail address from which the CSAM was located. But defendant denied that he intended to or downloaded the material. He asserted that the material went to his Google account because of the sync or import feature. Defendant intended to eradicate the content from his devices after he "skimmed it." He denied watching any content with a dog. When asked if he watched the videos that contained CSAM, defendant responded, "I can say that I did, and I can't say that I didn't. I can say that I skimmed a lot of material, but there . . . wasn't really any videos that I could watch from . . . start to finish." Defendant also testified that he did not understand why he skimmed the material. Yet, he explained that he tried to use the CSAM "to gather insight into [his] own trauma." The CSAM allowed him to understand things as an adult that he did not see as a child. Even so, defendant was unable to find anything to give him insight and it was "just a complete wasted attempt."

The jury convicted as charged.

## II. SUFFICIENCY OF EVIDENCE

Defendant alleges that there was insufficient evidence to prove beyond a reasonable doubt that defendant knowingly possessed relevant contraband on the date alleged, and therefore, the jury erred in convicting him of using a computer to commit a crime and aggravated possession of CSAM. We disagree.

## A. STANDARD OF REVIEW

A defendant need not take any action to preserve a challenge to the sufficiency of the evidence. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Smith*, 336 Mich App 297, 302-303; 970 NW2d 450 (2021). To determine whether sufficient evidence was presented at trial to support a conviction, this Court must examine the evidence in a light most favorable to the prosecutor to determine whether the jury could find the essential elements of the crime were proven beyond a reasonable doubt. *People v Baskerville*, 333 Mich App 276, 282; 963 NW2d 620 (2020). The review of a challenge to the sufficiency of the evidence is deferential. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).

---

[6] Defendant testified that he knew that he was a felon who was not permitted to possess a firearm. However, he testified that there was a home in his neighborhood where the occupant was killed during a break-in. Defendant acquired the gun to protect his family. He was convicted of felon-in possession and does not challenge this conviction on appeal.

[A] reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. It is for the trier of fact, *not the appellate court*, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. [*Id.* (citations and punctuation omitted).]

## B. ANALYSIS

"A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime." MCL 752.796. To establish the offense of using a computer[7] to commit a crime, the prosecutor must demonstrate two elements: "(1) the commission, attempted commission, conspiracy to commit, or solicitation of a crime; and, (2) through the use of a computer." MCL 750.145c(4) addresses the possession of CSAM and provides:

A person who knowingly possesses or knowingly seeks and accesses any child sexually abusive material if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime as follows:

\* \* \*

(b) If the child sexually abusive activity or child sexually abusive material involves a prepubescent child, sadomasochistic abuse or bestiality, or includes a video or more than 100 images of child sexually abusive material, the person is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $50,000.00, or both.

Defendant only protests the knowing possession requirement of aggravated possession of CSAM and submits that knowing possession cannot be established because he had no intention to download or retain the photos and videos containing CSAM on his electronic devices. Possession, however, may be actual or constructive. *People v Thorne*, 322 Mich App 340, 345; 912 NW2d 500 (2017). Constructive possession occurs if the person knowingly has the power and the intent

---

[7] Defendant did not assert that the electronic devices at issue failed to satisfy the definition of a computer. See MCL 752.792(3) (" 'Computer' means any connected, directly interoperable or interactive device, equipment, or facility that uses a computer program or other instructions to perform specific operations including logical, arithmetic, or memory functions with or on computer data or a computer program and that can store, retrieve, alter, or communicate the results of the operations to a person, computer program, computer, computer system, or computer network.").

to exercise dominion or control over a thing, either directly or through another individual. *People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012). Additionally, possession may be established by direct or circumstantial evidence. See *People v Barbee*, 325 Mich App 1, 12; 923 NW2d 601 (2018). "[A] defendant constructively possesses 'any child sexually abusive material' when he knowingly has the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons." *People v Flick*, 487 Mich 1, 15; 790 NW2d 295 (2010). The question of possession presents a factual inquiry to be answered by the jury. *Id*. at 14. It is the role of the jury, not the appellate court, to observe the witnesses and hear the testimony, and therefore, the appellate court must not interfere with the jury's assessment of the weight of the evidence and the credibility of the witnesses. *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). Any conflicts in the evidence are resolved in favor of the prosecution. *Id*. When a defendant's intent is at issue, it may be inferred from minimal circumstantial evidence and can also be gleaned from his actions. *Id*.

In *Flick*, the defendants asserted that the element of possession was not established because the CSAM was merely *viewed* rather than knowingly possessed. Our Supreme Court rejected the assertion, stating:

> When defendants purposefully accessed depictions of child sexually abusive material on their computer screens, each defendant knowingly had the power and the intention to exercise dominion or control over the depiction in myriad ways with a few keystrokes or mouse clicks. For example, defendants could: (1) print a hard copy of the depiction, (2) resize it, (3) internally save it to another folder on the hard drive, (4) externally save it using a CD-R or USB flash drive, (5) set the depiction as a screen saver or background theme, (6) share the depiction using a file-streaming network, (7) e-mail it, (8) post the depiction as a link on a website, (9) use the depiction to create a video or slide show, or (10) delete the depiction from the hard drive. We emphasize that a defendant knowingly having the power and the intention at a given time to exercise control or dominion over the depiction on his computer screen is similar to a defendant coming across contraband while walking down the street and taking additional intentional affirmative steps to knowingly possess it. [*Id*. at 17-18.]

In light of the *Flick* decision, defendant's challenge to the sufficiency of the evidence to support the knowingly possess element of his aggravated possession of CSAM conviction, and in turn, the using a computer to commit aggravated possession of CSAM, fails. Defendant testified that he was molested as a child and sought out the pornography to gain insight into his own trauma. He testified that he did not download the CSAM, but rather, it automatically "synced" to his devices. But when defendant purposely accessed the CSAM on his electronic devices, he had the power and intention to exercise dominion or control over the content in a variety of ways, and therefore, the knowingly possession requirement was satisfied. *Flick*, 487 Mich at 17. The attempt to distinguish between the mere viewing and knowing possession of CSAM is a "chimerical distinction" that ignores defendant's intention and power to exercise control or dominion over the depictions of CSAM displayed on his electronic devices. *Id*. at 15-16.

Further, defendant's challenge to the knowingly possess element involved a resolution of a conflict in the evidence. Defendant testified that he merely viewed the CSAM in an attempt to

gain insight into the abuse he suffered as a child. He denied ever downloading the CSAM to his electronic devices or the Google drive and asserted that the content was merely synced to his devices. But Detective Gladney conducted an analysis of the devices and determined that defendant actively downloaded the content to his devices. The credibility of this conflicting testimony presented an issue for the jury, as the trier of fact, and it resolved the conflict in favor of the prosecution. *Kenny*, 332 Mich App at 403.

Alternatively, defendant submits that the felony complaint alleged that the offenses occurred on May 19, 2020, and the prosecution never proved that he used his computer on that date. But the felony complaint alleged that the offenses occurred "[o]n or about 05/19/2020." And the later filed information and amended information contained this same language. Defendant further acknowledges that, at trial, the prosecution moved to amend the information to reflect that the offense date was on or about May 18 or 19, 2020, even though it never formally filed a second amended information. Defendant does not cite caselaw that a written amended felony complaint was necessary to comport with the proofs elicited at trial. A defendant may not merely announce a position and fail to support it with citation to applicable authority. *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016). In any event, MCL 767.76 and MCR 6.112(H) authorize a trial court to permit the prosecution to amend the information unless the defendant would be unfairly surprised or prejudiced by the amendment. In light of the "on or about" language, defendant can make no such claim here.[8] Moreover, the prosecution is not required to exactly identify the day of the offense, rather the information may state one time and the proofs show another. See *Turner v People*, 33 Mich 363, 378 (1876); *People v Gaines*, 306 Mich App 289, 298-299; 856 NW2d 222 (2014). See also MCL 767.51. The information merely had to identify the time of the offense "as near as may be," and a variance as to the time was not fatal unless time was of the essence to the offense.[9] MCL 767.45(1)(b); *Gaines*, 306 Mich App at 298-299. According to Detective Gladney, defendant admitted that he accessed his phone the day before the execution of the search warrant and did not find child pornography but later admitted the actual

---

[8] A possessory offense is, by nature, a continuing offense. See e.g., *People v Burgenmeyer*, 461 Mich 431, 436-440; 606 NW2d 645 (2000) (possession for purposes of a possessory firearm offense occurs while a defendant has proximity and reasonable access to the weapon); *People v Beverly*, 247 Mich 353, 355-356; 225 NW 481 (1929) (possession of alcohol is "a continuing offense as long as possession existed."). Accordingly, the jury could conclude that defendant knowingly possessed the CSAM on his devices on the date the search warrant was executed.

[9] Defendant does not allege that time was of the essence. Furthermore, the girlfriend testified that the occupants of the home included a family friend, defendant's minor child, defendant, and herself. The girlfriend testified that the family friend was only present in the home for two months before he died and defendant's child was only seven years old. The girlfriend denied that she downloaded any CSAM to defendant's devices. In his interview with Detective Gladney, defendant admitted that he accessed the drive the day before and did not find child pornography. The felony complaint alleged that the offense occurred "on or about" May 19, 2020. Under the circumstances, defendant's blanket challenge without citation to applicable authority does not entitle him to relief.

content. This access satisfied the "on or about" May 19, 2020 date identified in the information. Thus, this challenge does not entitle defendant to appellate relief.

## III. SENTENCE

Defendant contends that his sentence was unreasonable and disproportionate to the circumstances of the offense and the offender in light of mitigating circumstances, specifically the fact that he was the victim of sexual abuse as a child. We disagree.

## A. STANDARD OF REVIEW

The appellate court reviews the proportionality or reasonableness of a sentence under the abuse of discretion standard. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). An abuse of discretion occurs where a trial court's sentencing decision "falls outside the range of reasonable and principled outcomes." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017).

The principle of proportionality "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 459. When a trial court imposes a sentence within the minimum sentencing range, the only factors for determining whether resentencing is required due to a disproportionate sentence are inaccurate information relied upon in determining the sentence and error in scoring the sentencing guidelines. See MCL 769.34(10)[10]; *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

## B. ANALYSIS

At the sentencing hearing, the prosecutor alleged that defendant was previously convicted of first-degree criminal sexual conduct, but received only a 10-month period of incarceration with five years' probation.[11] She alleged that defendant next committed a violent assault upon his mother, and this resulted in him being charged as a third habitual offender. It was asserted that public safety required a lengthy period of incarceration because rehabilitation was unlikely whereas the likelihood of reoffending was high.

The defense countered that the likelihood of reoffending was not high because defendant's behavior, albeit inappropriate, arose from his search for answers and attempt at rehabilitation. Counsel attributed defendant's wrongful attempt at self-improvement to his use of methamphetamine, causing his improper judgment. As explained in defendant's testimony, he was the victim of sexual abuse as a child, and it had a persistent impact on his life. In his allocution,

---

[10] We recognize that our Supreme Court has scheduled oral argument to address legal challenges to this statute's validity. *People v Stewart*, 508 Mich 941; 964 NW2d 363 (2021); *People v Posey*, 508 Mich 940; 964 NW2d 362 (2021).

[11] The presentence investigation report reflects that defendant was actually convicted of second-degree criminal sexual conduct.

defendant expressed empathy for the children depicted in the CSAM, noting that he knew how they felt and the lifelong ramifications.

The trial court acknowledged the parties' arguments, the goal of sentencing, and the need for punishment when other means were unsuccessful. The trial court imposed sentences within the guidelines, and defendant does not allege otherwise. Consequently, there is a presumption of proportionality which can only be overcome if defendant demonstrates something unusual about the circumstances of the case which renders the sentence disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). We can discern nothing unusual about the case that would make the sentence imposed disproportionate and unreasonable. Thus, the trial court did not abuse its discretion.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Anica Letica
/s/ Michelle M. Rick