*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
August 15, 2024

v

No. 365015
Jackson Circuit Court
LC No. 2021-000919-FH

JIMMIE LEE TURNER,

      Defendant-Appellant.

Before: REDFORD, P.J., and GADOLA, C.J., and RIORDAN, J.

PER CURIAM.

Defendant was convicted by a jury of possession of a firearm by a felon (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a second-offense habitual offender, MCL 769.10, to 28 to 90 months' imprisonment for the felon-in-possession conviction, which is to run after and consecutive to a prison term of two years for the felony-firearm conviction. Defendant appeals by right, asserting that the jury venire did not represent a fair cross section of the community and that there was insufficient evidence to show that he possessed a firearm for purposes of both convictions. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND FACTS

On December 14, 2020, law enforcement was alerted that unauthorized occupants were inside an otherwise vacant, upper-floor apartment unit. When two police officers arrived at the apartment complex, they could hear voices emanating from the unit, but the voices fell silent once the officers knocked and announced themselves. Defendant fled by maneuvering over a balcony railing, and one of the officers ran down the stairs and intercepted defendant as he was climbing down the railing. Defendant was ordered to climb back up the railing and return to the apartment, and he complied. The officer who interrupted defendant's flight and ordered him back into the apartment located a handgun and an extended magazine on the ground below the balcony where defendant had tried to lower himself. Two other people were found inside the apartment, and they asserted to the police that they did not see defendant with a firearm.

Thermal imaging was taken of the handgun, which revealed that the gun was warmer than the ambient outdoor temperature. Also, DNA swabs were collected from defendant and the recovered handgun. Testing of the samples revealed that the handgun had DNA on it from four male contributors, one of whom was defendant. Defendant was convicted and sentenced as indicated earlier, and he now appeals.

## II. JURY-VENIRE COMPOSITION

On appeal, defendant first argues that because there were no African-Americans or individuals of color in his jury venire, his Sixth Amendment right to an impartial jury drawn from a fair cross section of the community was violated.

"[T]o properly preserve a challenge to the jury array, a party must raise the issue before the jury is empaneled and sworn." *People v McKinney*, 258 Mich App 157, 161; 670 NW2d 254 (2003). In this case, defendant objected to the jury venire after the jury was empaneled and sworn; therefore, his appellate argument was not properly preserved. This Court has applied the plain-error standard of review to unpreserved fair-cross-section issues. *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 21; *People v Jackson (On Reconsideration)*, 313 Mich App 409, 428; 884 NW2d 297 (2015). But in *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000), our Supreme Court noted that the United States Supreme Court in *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), gave examples of the limited constitutional circumstances in which *structural error* applies, including where there is a denial of equal protection by systematically excluding African-Americans from grand juries, as held in *Vasquez v Hillery*, 474 US 254, 263-264; 106 S Ct 617; 88 L Ed 2d 598 (1986). Nevertheless, because we conclude that defendant here has not established any error or entitlement to an evidentiary hearing, we need not explore whether plain-error or structural-error review is appropriate.

"A defendant has the right to be tried by an impartial jury drawn from a fair cross section of the community." *Jackson*, 313 Mich App at 428. In *People v Bryant*, 491 Mich 575, 581-583; 822 NW2d 124 (2012), our Supreme Court explained:

> A fair-cross-section claim under the Sixth Amendment requires a defendant to make a prima facie case as set forth by the United States Supreme Court in *Duren v Missouri*[, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979)]. Namely, a defendant must show:
>
> > (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

* * *

We hold that when applying all the relevant tests for evaluating the representation data, a court must examine the composition of jury pools or venires over time using the most reliable data available to determine whether representation of a distinct group is fair and reasonable.  [Quotation marks and citation omitted.]

"[O]nce the defendant has made a prima facie showing of an infringement of his constitutional right to a jury drawn from a fair cross section of the community, it is the State that bears the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest."  *Duren*, 439 US at 368.

Regarding the first prong of the *Duren* test, African-Americans constitute a "distinctive group" for purposes of a fair-cross-section claim.  See *Holland v Illinois*, 493 US 474, 485; 110 S Ct 803; 107 L Ed 2d 905 (1990); *Lockhart v McCree*, 476 US 162, 175; 106 S Ct 1758; 90 L Ed 2d 137 (1986).

Regarding the second prong of the *Duren* test, the Michigan Supreme Court in *Bryant*, 491 Mich at 599-601, observed:

We hold that when applying the relevant statistical tests, a court must examine the composition of jury pools and venires over time using the most reliable data available to determine whether representation is fair and reasonable. Our reading of *Duren* compels this conclusion. . . . [W]hen considering whether representation is fair and reasonable, *Duren* requires a court to evaluate the composition of venires over a significant time period rather than just the defendant's individual venire.

Consequently, the Court of Appeals wrongly considered the results of the tests from a data set that included only defendant's venire. Relying solely on the composition of defendant's venire resulted in misleading and exaggerated results. The representation of African-Americans in defendant's venire is only relevant as a part of the larger picture of venires or jury pools. Because underrepresentation in a single venire could result from chance, evaluating whether representation of a distinct group is fair and reasonable requires evaluating venire composition over time. Only then is it possible to see the degree of any underrepresentation.

In this case, defendant lacks evidence or information regarding the composition of jury pools and venires *over time*, pointing solely to his jury venire.  Accordingly, defendant cannot satisfy the second prong of the *Duren* test.  And with respect to the third prong of the *Duren* test, defendant acknowledges a lack of data or evidence showing that any underrepresentation was due to the systematic exclusion of African-Americans.  Therefore, there is no basis to reverse on defendant's fair-cross-section argument.

Defendant blames the trial court for failing to conduct a hearing in which defendant may have been able to provide evidence regarding the second and third prongs of the *Duren* test. Defendant argues that the trial court, by stating that it was denying any motion challenging the composition of the venire, implicitly rejected holding an evidentiary hearing and effectively ruled that there was no constitutional violation absent any support for such a determination.  We

conclude that it was necessary for defendant to at least request an evidentiary hearing on his fair-cross-section argument, and he failed to do so. Moreover, defendant failed to even timely raise the issue, waiting until after the jury was selected and empaneled. And then defendant neglected to file a motion to remand in this Court for purposes of seeking an evidentiary hearing. See MCR 7.211(C)(1). Finally, defendant has not even hinted at the possible existence of any data or information supporting his position on the second and third *Duren* prongs. In sum, reversal is unwarranted.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that that there was insufficient evidence showing that he possessed the handgun. We disagree. In *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020), this Court articulated the well-established principles that govern our review of a sufficiency argument:

> This Court reviews de novo whether there was sufficient evidence to support a conviction. In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. [Quotation marks and citations omitted.]

The elements of felon-in-possession are "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *Id*. at 268-269 (quotation marks and citation omitted).

We hold that there was sufficient evidence demonstrating beyond a reasonable doubt that defendant had actual possession of the firearm. We find instructive the following analysis in this Court's opinion in *People v Barbee*, 325 Mich App 1, 12-13; 923 NW2d 601 (2018):

> [A]ppreciating that circumstantial evidence and reasonable inferences arising from such evidence can constitute satisfactory proof of an element of a crime, including firearm possession, and resolving all conflicts in the evidence in favor of the prosecution, we hold that there was sufficient evidence for the trial court to find beyond a reasonable doubt that defendant possessed the gun.

-4-

Despite the lack of any direct evidence that defendant physically possessed the gun, we hold that there existed sufficient circumstantial evidence from which it could be reasonably inferred that defendant had actually possessed the gun before and at the time the police pulled up next to the vehicle in which defendant was a passenger. See *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012) (explaining that possession of a firearm can be either actual or constructive). The police testimony describing defendant's suspicious movements and his startled appearance when the officers stopped, his conduct in immediately jumping out of the vehicle, and the discovery of the weapon partway under the passenger seat, which location would be consistent with the nature of defendant's movements that suggested he had placed something under his seat, gave rise to a reasonable inference that defendant had physically handled and possessed the firearm. The evidence was sufficient to support the verdicts. [Citations omitted.]

As indicated earlier, there was evidence that defendant fled the upper-floor apartment by climbing down the balcony railing, but he was intercepted by the officer who directed defendant to climb back up and into the apartment. That officer then discovered a handgun on the ground, directly below where defendant had been dangling. And the handgun was found to be warmer than the ambient air, indicating that it had just been handled and inside on that December day. Additionally, fresh grass and dirt were discovered on the muzzle and barrel of the handgun. Furthermore, defendant's DNA was found on the firearm. We hold that when this evidence is viewed in a light most favorable to the prosecution, it was sufficient to prove beyond a reasonable doubt that defendant had possessed the handgun even though there was no eyewitness testimony placing the firearm in defendant's possession.

Affirmed.

/s/ James Robert Redford
/s/ Michael F. Gadola
/s/ Michael J. Riordan