*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DMG.

---

JACOB EDWARDS,

               Petitioner-Appellee,

v

DMG,

               Respondent-Appellant.

UNPUBLISHED
December 13, 2024
9:20 AM

No. 371623
Saginaw Probate Court
LC No. 24-145941-MI

---

Before: GADOLA, C.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order finding him to be a "person requiring treatment" and ordering involuntary mental health treatment consisting of hospitalization for up to 60 days. See MCL 330.1401. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Respondent is a soldier in the National Guard. He was taken to the hospital by his staff sergeant, who expressed concern because respondent threatened to stab and shoot fellow soldiers, was having hallucinations and delusions, and stated, "Lord forgive me for what I'm about to do" before firing a machine gun. A physician examined respondent and concluded that he was suffering from psychosis and required treatment. The trial court ordered respondent transported to another hospital for examination. At that hospital, a psychiatrist, Dr. Muhannad Kassawat, examined respondent and found that he was suffering from psychosis, mania, and delusions.

Dr. Kassawat and respondent testified at a hearing in Saginaw Probate Court before Kent Probate Court Judge David M. Murkowski, sitting by assignment. Dr. Kassawat stated that respondent was "hallucinating" and "was disorganized and very paranoid." When asked whether respondent posed a danger to himself, Dr. Kassawat responded that "due to his delusions, he might

put himself—in making threatening statements, he might end up getting hurt by his peers." And concerning respondent's military service, Dr. Kassawat explained:

> It's a very strict environment where there's a lot of stress, and a lot of them are exposed to stressful situation [sic] and trauma. I do not know that he has been exposed to any trauma, but, in general, the threshold for self-harm or harm to other (sic) is—is much lower in comparison to the regular population.

Respondent testified that he did not threaten any other members of his unit or squad, did not make any statement that he intended to hurt any of them, and did not do anything that could be perceived as threatening. Respondent denied "any need for mental health treatment or any mental health concerns" or any need for medication.

The trial court found by clear and convincing evidence that respondent was a "person requiring treatment" and ordered him hospitalized. Although the court did not believe respondent posed a risk to himself, it did find that respondent posed a threat to others on the basis of the threats alleged in the petition. The court also found that respondent's lack of awareness for the need for treatment "has caused him to demonstrate an unwillingness to either voluntarily participate in or adhere to treatment that's necessary . . . ." The court subsequently issued a written order hospitalizing respondent "for up to 60 days with no assisted outpatient treatment."

This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews the probate court's dispositional rulings for an abuse of discretion, and it reviews the probate court's underlying factual findings for clear error. *In re Moriconi*, 337 Mich App 515, 521-522; 977 NW2d 583 (2021). "Whether a person has been afforded due process is a question of law that is reviewed de novo." *In re Jestila*, 345 Mich App 353, 355 n 3; 5 NW3d 362 (2023) (quotation marks and citation omitted). This Court generally defers to a trial court's superior ability to evaluate the demeanor of a person who appeared before it, *People v Kammeraad*, 307 Mich App 98, 141; 858 NW2d 490 (2014), and "must not interfere with the trier of fact's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Barbee*, 325 Mich App 1, 12; 923 NW2d 601 (2018).

## III. ANALYSIS

"Proceedings seeking an order of involuntary mental health treatment under the Mental Health Code for an individual on the basis of mental illness generally are referred to as 'civil commitment' proceedings." *In re Londowski*, 340 Mich App 495, 503; 986 NW2d 659 (2022) (quotation marks, ellipsis, and citation omitted). In relevant part, " '[i]nvoluntary mental health treatment' means court-ordered hospitalization, assisted outpatient treatment, or combined hospitalization and assisted outpatient treatment," which may be ordered "for an individual if that individual is found to be a 'person requiring treatment' " as defined in MCL 330.1401. *Id*. at 504-505 (quotation marks and citations omitted). A "person requiring treatment" is defined in MCL 330.1401(1), in relevant part, as either of the following:

(a) An individual who has mental illness, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself, herself, or another individual, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

\* \* \*

(c) An individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

Under MCL 330.1400(g), "mental illness" is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." " 'A judge or jury shall not find that an individual is a person requiring treatment unless that fact has been established by clear and convincing evidence.' " *Londowski*, 340 Mich App at 505, quoting MCL 330.1465.

"Respondents in civil-commitment proceedings enjoy due-process rights," including notice of the proceedings and a meaningful opportunity to be heard, and those rights are satisfied by compliance with the procedures in the Mental Health Code. *In re Jestila*, 345 Mich App at 356. Those procedures must, therefore, be strictly complied with. *Id*. at 358-359. Unlike in criminal prosecutions, curtailment of a civil commitment respondent's liberty is not punitive and is instead intended "to provide appropriate treatment if the individual is found to require it," so the respondent's interest "is not as simple as avoiding involuntary treatment in all situations." *In re Londowski*, 340 Mich App at 510. "A person in need of treatment because of debilitating mental illness and meeting the statutory definition of a person requiring treatment, MCL 330.1401, also has an interest in obtaining the potential benefit of treatment that is properly warranted." *Id*. at 511.

Respondent raises several procedural challenges to the trial court's order, contending that the irregularities amounted to violations of his right to due process.[1] Although the trial court displayed some inattention to clerical details, we disagree with respondent's contention that there was plain error amounting to a deprivation of his due-process rights.

The trial court's order for examination and transport failed to place check marks in any of the boxes to signify the court's factual findings. We presume this oversight was an obvious error,

---

[1] Respondent did not preserve these arguments by raising them below. See *In re Jestila*, 345 Mich App at 355 n 3. Therefore, we review these challenges for plain error affecting respondent's substantial rights. *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 4-5. "Under this standard, a party must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings." *Id*. at ___; slip op at 3 (quotation marks and citation omitted).

but correction of the error would not have affected the outcome of the proceedings. Because a clinical certificate was attached to the petition, and because it is plainly apparent that respondent was unwilling to make himself available for examination, the trial court was required to enter the order. See MCL 330.1435(1) ("If the petition is accompanied by 1 clinical certificate, the court shall order the individual to be examined by a psychiatrist."). Respondent contends that it is unclear whether the court had the petition available to it, but this is based on nothing more than mere speculation. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.") (quotation marks and citation omitted). Moreover, it is inconceivable the matter would have been submitted to the court without the petition and attached clinical certificate. Finally, although respondent arguably would not have been subjected to mental health treatment "but for" the order for examination and transport, such an order necessarily recognizes the possibility that no treatment would have been warranted. MCL 330.1435(5). Thus, any error in failing to fill out the template for the order was obviated by the subsequent proceedings.

Respondent also argues that the record does not include an order of assignment for Judge Murkowski and that the Kent Probate Court lacked jurisdiction. However, Judge Murkowski stated on the record that such an assignment had occurred. Furthermore, the face of the hearing transcript reflects that it was a proceeding in the Saginaw Probate Court, Judge Murkowski specifically stated that it was "a Saginaw County Probate Matter," and the Saginaw Probate Court entered the ensuing order. Respondent has not articulated any factual basis for this argument; nor is any factual basis for this argument apparent from the record. See *Mudge*, 458 Mich at 105. Respondent alludes to, but does not develop, several other contentions of error. Because he does not support them with factual or legal support, they are waived. See *id.*; *Batton-Jajuga v Farm Bureau Gen Ins Co of Mich*, 322 Mich App 422, 437; 913 NW2d 351 (2017) ("Other than briefly alluding to the issue, Farm Bureau has failed to develop it with any rigor and therefore has waived it.".)

Respondent also challenges the trial court's finding that respondent is a "person requiring treatment." Dr. Kassawat testified that respondent suffered from unspecified psychosis and was paranoid and disorganized. Respondent argues that his testimony at the hearing was sufficiently rational and sensible to refute that testimony, and correctly argues that the trial court was not obligated to believe what the psychiatrist said. *People v Baskerville*, 333 Mich App 276, 283-284; 963 NW2d 620 (2020) (stating that the finder of fact may "choose to believe part of a witness's testimony and disbelieve another part of the same witness's testimony."). The same principle, however, applies equally to respondent's brief testimony.

We disagree with respondent that the trial court erred by finding that he posed a risk of harm to others under MCL 330.1401(1)(a) and (c). The main evidence in the record that respondent made any threats to other individuals was the statement in the petition that as respondent was preparing to fire a gun, he stated: "Lord forgive me for what I'm about to do." This statement was related by Staff Sergeant Jacob Edwards, who did not testify during the hearing. The statement was relied on by Dr. Kassawat in forming his opinion that respondent was a "person requiring treatment" under the Mental Health Code.

Hearsay is a statement that the declarant does not make while testifying and that a party offers "to prove the truth of the matter asserted in the statement." MRE 801(c). Under MRE 802, hearsay is inadmissible unless it falls under an exception. The court may allow "hearsay data that are part of the basis for the opinion presented by a testifying mental health expert," MRE 1101(b)(10). "[H]earsay data" refers to "documents not personally prepared by [the witness]." *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369225), slip op at 7 n 3. The statement by Edwards was relied on by Dr. Kassawat, who examined respondent personally, and formed part of the basis of his opinion that respondent was a person who required treatment. Accordingly, Edwards's hearsay statement was admissible under MRE 1101(b)(1), and the trial court did not err by considering it. See *id*. at ___; slip op at 7 (stating that statements made by the respondent's father concerning respondent and relied on by the expert witness were admissible under MRE 1101(b)(10)).

On the basis of Dr. Kassawat's testimony, including the statement related by Edwards, the trial court did not clearly err when it concluded, on the basis of clear and convincing evidence, that respondent was a "person requiring treatment." While respondent did not believe he had any mental health concerns and did not believe he needed any treatment, the trial court did not clearly err by finding that respondent suffered from mental illness. Dr. Kassawat found respondent disorganized and paranoid. He further explained that military service was a high-stress environment and, because of the stress and access to weapons, service members were at higher risk than the general population. Given respondent's belief that he did not have a mental illness and apparent belief that he was, in fact, immune to any debilitating effects of stress, the trial court did not clearly err by finding that respondent posed a substantial risk of significant harm to others—whether on his own or because of how his fellow soldiers would react to him—in his service environment. This finding was proper under MCL 330.1401(1)(a) because there was clear and convincing evidence before the trial court that respondent posed a risk of harm to others given his mental state and access to weapons. Similarly, the finding was proper under MCL 330.1401(1)(c) because there was clear and convincing evidence that respondent—an individual with ready access to weapons—was suffering from psychosis, was refusing treatment and, therefore, posed a future risk of harm to himself or others. Thus, the trial court did not clearly err by finding respondent to be a "person requiring treatment" and by ordering hospitalization.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle