PEOPLE *v.* JENKINS.

CRIMINAL LAW—DRIVING WITHOUT OPERATOR'S LICENSE—EVIDENCE—
SCOPE OF REVIEW ON APPEAL.

Conviction of driving without an operator's license is affirmed,
where lack of immediate possession of the license was admitted,
the coupled claim that the alleged wrongful original taking
from defendant of his license by court clerk following convic-
tion by referee of traffic and ordinance division of recorder's
court of Detroit on charge of driving with defective brakes
and putting defendant on probation without the right to drive
a car not being reviewable on appeal from conviction of the
third offense of driving without an operator's license (CLS
1956, § 257.904).

Appeal from Recorder's Court for the City of
Detroit, Traffic and Ordinance Division; Murphy
(George T.), J. Submitted June 12, 1958. (Docket
No. 48, Calendar No. 47,376.) Decided September
9, 1958.

Rudy V. Jenkins was convicted of operating a
motor vehicle without an operator's license. Af-
firmed.

*Paul L. Adams,* Attorney General, *Samuel J.
Torina,* Solicitor General, *Samuel H. Olsen,* Prose-
cuting Attorney, and *Samuel Brezner,* Assistant
Prosecuting Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES
5A Am Jur, Automobiles and Highway Traffic § 1197.

*Okrent, Baun & Dobreff* (*E. Dobreff*, with *Charfoos, Gussin, Weinstein & Kroll*, and *I. Kroll*, of counsel), for defendant.

VOELKER, J. The defendant was stopped for speeding on the Detroit expressway and it was discovered that he had no operator's license in his immediate possession, an offense under State law (PA 1949, No 300, § 311 [CLS 1956, § 257.311, Stat Ann 1952 Rev § 9.2012]) for which he was charged, tried, convicted, and sentenced to serve 90 days in jail. Upon leave granted he has appealed here.

Defendant's major claim for relief is planted on the ground that the reason he admittedly failed to have his operator's license in his immediate possession was that it had some 2 years earlier been "unlawfully and illegally confiscated without right" by the traffic and ordinance division of the recorder's court for the city of Detroit following his conviction for the violation of a traffic ordinance.

We gather from the truncated record before us that this is what happened: back in 1954 defendant was ticketed for driving with defective brakes and later tried under an ordinance on this subject by a referee of the traffic and ordinance division of the recorder's court. The referee appears promptly to have found him guilty and written on the back of his ticket "6 months probation, no driving," following which the court clerk asked for and took possession of defendant's operator's license, where it apparently still reposes.

Thereafter, and within the 6-months' probationary period above mentioned, the defendant was prosecuted and convicted under State law for driving without an operator's license. For this he was given 10 days in jail in addition to probation for 1 year with no driving. Thereafter and within a year, the defendant was again prosecuted and convicted

under State law for again driving without an operator's license and this time was given 20 days in jail with 2 years' probation and no driving.* During this 2-year period the present offense was committed, which is the only conviction of the foregoing series from which the defendant has taken any appeal.

It is the defendant's contention that the original taking of his operator's license was unlawful; that his so-called original probation was faulty and a nullity (largely because of the failure actually to place him under the statutorily contemplated supervision of a probation officer); that in any case the traffic referee is not a judge and therefore lacked the power to place him on probation; and finally that the taking of an operator's license is never a lawful order under probation. He seeks also to attack the constitutionality of the legislation creating referees of the traffic and ordinance division of the recorder's court. In fact he seeks to question the legality of many, if not the entire present traffic procedures before the referees of that court, calling it in effect a scandalously rushed and crowded legal treadmill from which the last vestiges of any concern for even elementary due process have long since flown. Finally, it is his claim that since his original conviction and sentence was unlawful and void that all interim convictions, including the last, must fall. With this final proposition we cannot agree.

However interesting and possibly meritorious the questions may be of whether or not certain trial and probationary procedures before the referees of the traffic and ordinance division of the recorder's court for the city of Detroit are faulty and illegal, they cannot be raised as the defendant seeks here to

---

* See CLS 1956, § 257.904 (Stat Ann 1952 Rev § 9.2604).—RE-PORTER.

raise them. We therefore do not pass on them nor do we undertake to say precisely how they may be raised, but it appears likely it would have to be on some sort of direct appeal from the conviction complained of, or possibly in some appropriate proceeding addressed directly at recovering the allegedly wrongfully confiscated operator's license, but certainly not obliquely and collaterally and several years (and convictions) later, as here. That all of these convictions happened to occur in one area is coincidental. Had this same defendant instead been last arrested for this offense while touring in the distant Upper Peninsula we doubt that a village justice of peace there would or should be expected to grapple with or pass on a defense contention attempting to attack an old Detroit conviction, however faulty, as well as the legality of the referee traffic system in Detroit. We think the defendant should timely have pulled the laboring oar himself. This would doubtless be true even if someone had stolen his operator's license. His conviction below must, accordingly, be affirmed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.