*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

FRANCOIS FRANCOIS FLEMING,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2024
11:39 AM

No. 366790
Wayne Circuit Court
LC No. 22-003312-01-FH

Before: FEENEY, P.J., and O'BRIEN and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial conviction of carrying a concealed weapon (CCW), MCL 750.227(2), for which he was sentenced to two years' probation. We affirm.

## I. BACKGROUND

Defendant was driving a Ford Fusion with tinted windows when he was spotted by Detroit Police Officers Wesley Williams and Ricky Hayes. Defendant's friend was in the passenger seat. The officers ran the plates of the vehicle, which revealed it was not insured, so the officers initiated a traffic stop. Before and during the stop, the officers observed defendant making furtive movements from the driver's seat of the vehicle. Officer Williams stated that he saw defendant reaching toward the rear passenger side of the Fusion, pulling down the seat, and then reaching back there again. He suspected defendant put something in the back of the car.

Defendant admitted that he did not have a concealed pistol license (CPL), nor did his friend. The two were detained near the patrol car while Officer Williams searched the vehicle. Officer Williams went immediately to the rear passenger seat, pulled down the seat to access the trunk, and saw a gun half inside a lockbox. According to Officer Williams, the gun handle was stopping the lockbox from closing all the way. A magazine of ammunition for the gun was found in the glove compartment. Defendant's friend admitted that the gun was registered to her, but defendant was still charged with CCW.

At a bench trial, defendant's defense focused on challenging the officers' testimony with respect to what they could see him doing from their patrol car. Defendant testified that his friend

put the gun in the trunk when she got in his car earlier in the day and it never moved from there. The trial court believed the officers and convicted defendant.

After his conviction and sentence, defendant filed a postjudgment motion for entry of a directed verdict of acquittal, arguing that MCL 750.227(2) violated his rights under the Second Amendment of the United States Constitution. Defendant challenged the statute both on its face and as applied to him. The as-applied challenge focused on his inability to obtain a CPL at the time of the crime because of a domestic-violence conviction. The prosecution argued in response that MCL 750.227(2) was constitutional on its face, and that defendant's as-applied challenge was an impermissible collateral attack on Michigan's licensing scheme for CPLs. The trial court determined that defendant's constitutional claims lacked merit and denied the motion.

This appeal followed.

## II. CONSTITUTIONALITY OF MCL 750.227(2)

Defendant argues that MCL 750.227(2) is unconstitutional on its face and as applied to him. We disagree that MCL 750.227(2) is facially unconstitutional, and decline to address the merits of defendant's as-applied challenge because his argument is a collateral attack on Michigan's licensing scheme for CPLs.

### A. STANDARD OF REVIEW

"We review de novo constitutional issues and matters involving statutory interpretation." *People v Johnson*, 336 Mich App 688, 692; 971 NW2d 692 (2021).[1]

### B. FACIAL CONSTITUTIONAL CHALLENGE

The statute at issue, which criminalizes the carrying of a firearm in an automobile without a CPL, is constitutional on its face.

"A party challenging the constitutionality of a statute has the burden of proving its invalidity." *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022). "A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *Johnson*, 336 Mich App at 692 (quotation marks and citation omitted). "A facial challenge involves a claim that there is no set of circumstances under which the enactment is constitutionally valid, while an as-applied challenge considers the specific application

---

[1] The parties dispute whether defendant's constitutional arguments were preserved by the filing of his postjudgment motion. Neither party has identified clear caselaw on the matter. Regardless, in this instance, we will overlook any preservation errors and consider defendant's argument. See *People v Wiley*, 324 Mich App 130, 150, 919 NW2d 802 (2018); *People v Wilson*, 230 Mich App 590, 593; 585 NW2d 24 (1998) ("Although defendant should have challenged the constitutionality of the statute in the trial court to preserve the issue for appellate review, we may still consider this constitutional question absent a challenge below.").

of a facially valid law to individual facts." *People v Adamowicz (On Second Remand)*, 346 Mich App 213, 220; 12 NW3d 35 (quotation marks and citations omitted). "Statutes are presumed to be constitutional unless their unconstitutionality is clearly apparent." *People v Wiley*, 324 Mich App 130, 151, 919 NW2d 802 (2018) (quotation marks and citation omitted).

MCL 750.227(2) provides:

> A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.

Defendant claims that the clause criminalizing carrying a pistol "whether concealed or otherwise, in a vehicle operated or occupied by the person," violates the Second Amendment of the United States Constitution.[2] US Const, Am II. That amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *Id*. "[T]he Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right," making it applicable to the states. *McDonald v Chicago*, 561 US 742, 791; 130 S Ct 3020; 177 L Ed 2d 894 (2010).

"The Second Amendment guarantees 'the individual right to possess and carry weapons in case of confrontation.' " *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013), quoting *Dist of Columbia v Heller*, 554 US 570, 592; 128 S Ct 2783; 171 L Ed 2d 637 (2008). "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Ass'n, Inc v Bruen*, 597 US 1, 17; 142 S Ct 2111; 213 L Ed 2d 387 (2022). "To justify its regulation, the government may not simply posit that the regulation promotes an important interest" but "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

Defendant argues that, following *Bruen*, MCL 750.227(2)'s clause respecting automobiles is facially unconstitutional. After the parties filed their briefs, this very issue was decided by this Court in a published opinion. See *People v Langston*, ___ Mich App ___, ___; ____ NW3d ___ (2024) (Docket No. 367270). In *Langston*, the defendant argued that "the very existence of the requirement to have a CPL" to carry a gun in an automobile "runs afoul of the Second Amendment under *Bruen*," and this Court held that it did not. *Id*. at ___; slip op at 3.

---

[2] Although defendant cites both the United States and Michigan Constitutions in his issue statement, he provides no argument regarding Const 1963, art 1, § 6. Instead, his argument is entirely focused on federal caselaw interpreting and applying the Second Amendment of the United States Constitution. As a result, to the extent defendant intended to bring a separate challenge under the Michigan Constitution, it has been abandoned, and we decline to consider it further. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009) ("Defendant has abandoned this issue by failing to provide any analysis in the text of his brief on appeal.").

This holding applies directly to the argument raised by defendant in this case. Pertinently, as to his facial challenge, he alleges that the government cannot require him to have a license to carry a weapon in his automobile under *Bruen*. The *Langston* Court considered that question, analyzed *Bruen*, and held that the argument lacked merit. We are bound by the decision in *Langston* under the rule of stare decisis. See *People v Bennett*, 344 Mich App 12, 21; 999 NW2d 827 (2022). Consequently, defendant's facial challenge to the constitutional validity of MCL 750.227(2) lacks merit. *Langston*, ___ Mich App at ___; slip op at 3.

## C. AS-APPLIED CONSTITUTIONAL CHALLENGE

As for defendant's claim that MCL 750.227(2) is unconstitutional as applied to him, we conclude that this claim is an impermissible collateral attack on Michigan's statutory scheme for issuing CPLs, which precludes us from addressing the argument.

Defendant argues that MCL 750.227(2) is unconstitutional as applied to him because, at the time of his offense, he was ineligible for a CPL due to a 2014 domestic-violence conviction. Defendant is correct in that, under MCL 28.425b(7)(h)(*ix*), a person who was convicted of misdemeanor domestic violence under MCL 750.81 is barred from obtaining a CPL for eight years.[3]

The prosecution contends that we need not get to the merits of this argument because this is not the proper case to consider a challenge to Michigan's licensing scheme for CPLs. According to the prosecution, defendant was required to apply for a license under the scheme, be denied, then bring a suit for mandamus arguing that the provision barring him from receiving a license was unconstitutional, like the plaintiffs in *Bruen* did. *Bruen*, 597 US at 15-16. Challenging the licensing scheme in the manner plaintiff attempts to here—that is, disregarding the licensing requirement, carrying a concealed firearm in violation of the statute, getting charged and

---

[3] That statute provides, in pertinent part:

> (7) The county clerk shall issue and shall send by first-class mail a license to an applicant to carry a concealed pistol within the period required under this act if the county clerk determines that all of the following circumstances exist:
>
> * * *
>
> (h) Based solely on the report received from the department of state police under subsection (6), the applicant has not been convicted of a misdemeanor violation of any of the following in the 8 years immediately preceding the date of application and a charge for a misdemeanor violation of any of the following is not pending against the applicant in this state or elsewhere at the time the applicant applies for a license described in this section:
>
> * * *
>
> (*ix*) Section 81 (assault or domestic assault) . . . . [MCL 28.425b(7)(h)(*ix*).]

convicted, then challenging the constitutionality of the licensing decision on appeal—amounts to an impermissible collateral attack on the licensing scheme, the prosecution argues. We agree.

"An impermissible collateral attack occurs whenever challenge is made to judgment in any manner other than through a direct appeal." *People v Iannucci*, 314 Mich App 542, 544-545; 887 NW2d 817 (2016) (quotation marks and citation omitted). Although this exact issue appears not to have come up in an appellate decision in Michigan, a similar issue has. In *People v Jenkins*, 353 Mich 481, 482; 92 NW2d 56 (1958), our Supreme Court considered an appeal from the defendant's conviction of driving without a license. The defendant claimed that he did not have the license because it had been "unlawfully and illegally confiscated" after a previous legal issue. *Id*. On appeal from the driving-without-a-license conviction, the defendant attempted to challenge the underlying decision to take away his license, arguing that the decision to revoke his license was on the basis of an unconstitutional statutory scheme providing judicial power to referees. *Id*. at 483. Our Supreme Court declined to consider those arguments because they were not properly raised. *Id*. at 483-484. The Court reasoned that, whatever the proper way to raise the issues was, it was "certainly not obliquely and collaterally." *Id*. at 484.

In a more recent decision, though still 40 years ago, this Court reached a similar conclusion. In *People v Glantz*, 124 Mich App 531, 533; 335 NW2d 80 (1983),[4] the defendant was appealing a conviction of operating a motor vehicle without a license. Relevantly, the defendant in *Glantz* attempted, in part, to challenge the decision of the Secretary of State to suspend his driver's license, claiming that there was no evidence that "the Secretary of State complied with the notice provisions of" the relevant Michigan statute for suspending licenses. *Id*. This Court declined to consider the underlying claim, explaining, "A collateral attack on the validity of the suspension of a driver's license in a case where the defendant is charged with driving while his license is suspended is improper." *Id*., citing *Jenkins*, 353 Mich at 484. "If defendant believed that his license was improperly suspended, his action should have been to petition for a hearing in circuit court for an order modifying or setting aside the suspension." *Glantz*, 124 Mich App at 533.

Although neither of those cases involved firearms, the logic behind the decisions applies in the present case. Rather than challenging the statute under which he was convicted, defendant is challenging the licensing scheme, specifically whether MCL 28.425b(7)(h)(*ix*) is an unconstitutional infringement on his Second Amendment right to keep and bear a firearm.[5] This means that defendant has not actually challenged MCL 750.227(2) as applied to him; he has challenged the decision of the Legislature to bar him from obtaining a CPL for eight years after a domestic-violence conviction. This is an improper collateral attack. *Jenkins*, 353 Mich at 484; *Glantz*, 124 Mich App at 533. If defendant believed he had the constitutional right to have a CPL,

---

[4] Cases decided by the Court of Appeals before November 1, 1990, are not strictly binding, see MCR 7.215(J)(1), though published cases decided before that date still have "precedential effect under the rule of stare decisis," MCR 7.215(C)(2).

[5] Defendant asserts in his brief "that the 8-year ban imposed on him by the State of Michigan from him being able to use a firearm in self-defense in a motor vehicle because of the domestic assault conviction is unconstitutional and violates his Second Amendment rights."

he should have directly challenged the licensing scheme that was denying him one. *Jenkins*, 353 Mich at 484; *Glantz*, 124 Mich App at 533.

Under MCL 750.227(2), a person is prohibited from carrying a firearm in a motor vehicle unless they have a CPL. Defendant did not have a CPL and was carrying a gun while driving a motor vehicle. His allegation that the licensing scheme improperly barred him from obtaining a license did not excuse his violation of MCL 750.227(2). This appeal from a conviction of CCW under MCL 750.227(2) is not the proper avenue to challenge the constitutionality of Michigan's scheme for issuing CPLs. Such a challenge in this context amounts to a collateral attack on the licensing scheme, and for that reason, we decline to consider defendant's argument further.

## III. SUFFICIENCY AND GREAT WEIGHT

Defendant also argues both that there was insufficient evidence to sustain his conviction of CCW and that the trial court's verdict was against the great weight of the evidence. We disagree.

## A. STANDARDS OF REVIEW

Our Supreme Court explained the standard of review when considering a challenge to the sufficiency of the evidence after a bench trial in the following manner:

> Challenges to the sufficiency of the evidence are reviewed de novo. In evaluating defendant's claim regarding the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. . . . Circumstantial evidence is evidence of a fact, or a chain of facts or circumstances, that, by indirection or inference, carries conviction to the mind and logically or reasonably establishes the fact to be proved. Circumstantial evidence may sustain criminal convictions, but the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation. [*People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020) (quotation marks, citations, and alteration omitted).]

"Findings of fact by the trial court may not be set aside unless they are clearly erroneous." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014) (quotation marks and citation omitted).

For defendant's great-weight-of-the-evidence claim, this Court recently restated the standards of review for such a claim following a bench trial as follows:

> We review a great-weight challenge by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. The trial court's factual findings in a bench trial are reviewed for clear error. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction

-6-

that a mistake has been made. [*People v Anderson*, 341 Mich App 272, 276-277; 989 NW2d 832 (2022) (quotation marks and citations omitted).]

## B. LAW AND ANALYSIS

There was sufficient evidence to sustain defendant's conviction of CCW, and the trial court's verdict was not against the great weight of the evidence.

As noted, defendant opted for a bench trial instead of a jury trial. Unlike jury trials where the jury renders "a unanimous verdict, without the need for explanation," *Xun Wang*, 505 Mich at 250, in a bench trial, the trial court must "find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record." MCR 6.403. This extra step allows for reviewing courts to have "greater insight into the specific evidence found by the trial court to support verdicts in bench trials." *Xun Wang*, 505 Mich at 250.

Defendant was convicted of CCW under MCL 750.227(2). "To support a conviction for carrying a weapon in [a vehicle], the prosecution must show: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was 'carrying' it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (quotation marks and citation omitted; alteration in original). Defendant solely disputes the third element—he claims that there was insufficient evidence to prove that he carried the gun found by officers. "[T]he 'carrying' element of CCW has been equated to possession." *People v Barbee*, 325 Mich App 1, 12 n 4; 923 NW2d 601 (2018), citing *People v Butler*, 413 Mich 377, 390 n 11; 319 NW2d 540 (1982). This Court provided the following discussion regarding proving a person was in possession of, and thus "carrying," a firearm:

> Possession of a firearm can be actual or constructive, joint or exclusive. A person has constructive possession if there is proximity to the article together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact. [*People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (quotation marks, citations, and alteration omitted).]

There is no dispute that defendant was driving the Ford Fusion on August 12, 2021, with his friend in the passenger seat. Officers Williams and Hayes saw that the Fusion had tinted windows, so they started following it. They ran the plates in LEIN, which revealed that the vehicle was uninsured. A dashcam video from the officers' police car that was admitted into evidence and provided to this Court on appeal begins with the officers in their car immediately behind the Fusion stopped at a red light. From the video, it is evident that someone in the driver's seat is moving inside the vehicle, though the specific movements are difficult to discern. Officer Williams testified that his live view of the situation on the day in question was better than the video quality. Officer Williams stated that he saw the driver arch his body to help him reach toward the rear passenger seat, pull down the backseat to allow access to the trunk, then put something inside of it. Officer Hayes agreed that his view was better during the day, but he could not recall as many specifics as Officer Williams.

Initially, the dashcam and body cam videos[6] have no sound, but when the emergency siren and lights were initiated, the video started recording sound. Officer Williams can immediately be heard narrating what he was seeing in the Fusion. He commented that the driver kept reaching toward the backseat. Officer Williams told Officer Hayes that the item moved to the back of the vehicle would be found near the rear passenger seat. Once defendant stopped the vehicle, Officer Williams got out of his patrol car and approached the driver's side of the Fusion. In the process of removing defendant from the car, the bodycam shows the backseat of the vehicle. The backseat was not pulled down.

After getting defendant and his friend out of the vehicle and restrained, Officer Williams returned to search it. He went directly to the rear passenger side of the vehicle, pulled down the backseat to access the trunk, and saw the gun. Officer Williams testified that the gun was half inside a lockbox, which was propped open because the handle of the gun was hanging out of it. The dashcam video moves quickly, but Officer Williams can be seen opening the lockbox without unlocking anything. Officer Williams later found a magazine of ammunition for the gun in the front glove box.

Defendant at trial claimed that the gun was not his but belonged to his friend. He said that she placed the gun, which was inside the lockbox, in the trunk of the Fusion. Defendant denied ever holding the gun or moving it into the trunk. He insisted that the police officers could not have seen him moving because of the tinted windows, and even so, defendant was unable to reach all the way into the backseat from the driver's seat.

The trial court considered the above evidence and determined that the prosecution had met its burden of proving that defendant violated MCL 750.227(2) beyond a reasonable doubt. Most relevantly, after hearing the officers' testimony and watching the videos, the trial court found that the officers' version of events was credible. While the trial court noted that it was difficult to see from the video, there was some movement visible inside the Fusion. The trial court also relied on Officer Williams's contemporaneous statements in the video that he could see movement and saw enough to posit that the item being moved would be near the rear passenger seat. That is, of course, where the gun was eventually found, albeit behind the rear passenger seat and in the trunk. Ultimately, the key finding was the trial court believing the officers' testimony.

Now on appeal, defendant argues that the trial court's finding was on the basis of insufficient evidence because the prosecution did not prove beyond a reasonable doubt that defendant carried the gun. In making this argument, defendant, at one point, claims that the trial court solely determined that defendant did not actually possess the firearm but only constructively possessed it. This is incorrect. While the trial court did comment on constructive possession, the trial court specifically found that the police officers' testimony about what they saw happening inside the vehicle before the Fusion was stopped was credible. On the basis of this finding, the trial court determined that defendant *actually* possessed the gun, because Officer Williams said that the object was removed from next to defendant's right side and then placed in the trunk.

_____

[6] Officer Williams' bodycam video was also admitted at trial and provided to this Court on appeal.

Because carrying is accomplished by physically possessing the gun, the trial court's finding on this issue was determinative of the third element of CCW. *Barbee*, 325 Mich App at 12 n 4.

To avoid this conclusion, defendant contends that no reasonable trier of fact could believe the officers' testimony. In support of this argument, defendant first cites the officers' supposed inability to see through the tinted windows of the Fusion. The dashcam video, however, shows the rear window is at least partially see-through. Additionally, the trial court credited the officers' testimony they could see better with their naked eye than what the dashcam video showed. When considering a challenge to the sufficiency of the evidence, we must defer to the trial court's factual findings and credibility determinations. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008) ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."). On the basis of this evidence, the trial court did not clearly err by finding that the officers could see defendant's movements from outside of the car. *Id*.

Defendant next contends that the trial court should not have believed the officers' testimony because it was physically impossible for defendant to reach from the driver's seat to the rear passenger side and put the gun in the trunk, particularly not while driving the car. The trial court found that it was indeed possible, and this finding was supported by the evidence. Officer Hayes testified that the area of the backseat where one could access the trunk was within an "[a]rm's reach" of the driver's seat. Defendant testified that he was 6'2" in height. Officer Williams added that defendant likely increased his reach by lifting his torso out of the front seat. As can be seen in Officer Williams's bodycam footage, the distance between the driver's seat of the Fusion and the rear passenger seat with access to the trunk is not so great that a tall man could not reach from the driver's seat into the back, pull down the seat, and place something in the trunk area. Indeed, the gun was found directly behind the seat, which meant that nearly the same reach was required to pull down the seat as to place the gun in the lockbox. As for defendant moving the gun while driving, the dashcam and bodycam footage show that much of the movement occurred while both cars were stopped at a traffic signal. In light of this evidence, defendant has not identified anything that causes us to be definitely and firmly convinced that the trial court made a mistake in believing that defendant reached behind him and placed the gun in the trunk. *Gingrich*, 307 Mich App at 661.

Defendant insists that the trial court should not have believed Officer Williams because he supposedly lied during his testimony. Defendant claims that Officer Williams testified that the backseat was down when he searched the vehicle, but the bodycam video showed that it was up. Defendant is correct that Officer Williams's bodycam footage shows the backseat was up when the search began. It is also true that when Officer Williams was asked to confirm that the backseat was down when the search began, he answered "I believe so," then added, "I'm gonna tell you, that's correct." By the time of trial, however, it had been more than one year since Officer Williams searched the Fusion, and it would be reasonable for an individual to forget exactly what occurred after that amount of time. Considering the minimal nature of the error by Officer Williams and the length of time since the event occurred, the trial court's decision to believe the remainder of his testimony was entirely reasonable. In other words, this is not a reason to disregard the trial court's credibility determination, which is entitled to deference. *Kanaan*, 278 Mich App at 619.

Next, defendant contends that no reasonable fact-finder could believe the officers' testimony because they lied about the gun being half inside the lockbox. According to defendant, Officer Williams' bodycam footage showed that the lockbox was closed when he opened the backseat access to the trunk. This argument lacks merits. The dashcam video does show Officer Williams opening the lockbox, but before that, Officer Williams exclaims that he found the gun. From this, it could be inferred that Officer Williams saw the handle of the gun hanging out of the lockbox when he opened the backseat access. Because it was mostly closed, it is clear that Officer Williams would have to lift the lid to get full access to the gun. This does not necessitate an inference the lockbox was fully closed. Consequently, in deciding to believe Officer Williams' testimony about how the gun was found, the trial court did not clearly err.

In sum, defendant has identified a host of factual issues and questions about what weight should be given to the evidence, but the trial court already answered those questions, and we defer to the fact-finder's determinations about the weight of the evidence and the credibility of witnesses. *Kanaan*, 278 Mich App at 619. On the basis of his claim that the officers could not be believed, defendant insists that the only possible conclusion from the evidence was that his friend placed the closed lockbox in the trunk when she got in the car, where it remained until Officer Williams found it. And defendant correctly observes that carrying a firearm in a lockbox in the trunk is not a violation of the CCW statute. See MCL 750.231a(1)(d). However, as discussed in depth above, the trial court did not clearly err when it found that defendant actually possessed the handgun inside the Fusion before placing it in the trunk. This established that defendant carried the firearm as meant by the statute, making MCL 750.231a(1)(d) inapplicable. Given this conclusion, defendant's argument regarding sufficiency of the evidence lacks merit.

Defendant alternatively argues that the trial court's verdict was against the great weight of the evidence. As noted above, we "review a great-weight challenge by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Anderson*, 341 Mich App at 276-277 (quotation marks and citation omitted). "Conflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial. Absent exceptional circumstances, issues of witness credibility are for the trier of fact." *Id*. at 277 (quotation marks and citation omitted). "Generally, a verdict is against the great weight of the evidence only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. (quotation marks and citation omitted).

Defendant's arguments about the great weight of the evidence are the same as those addressed above with respect to the sufficiency challenge. That is, defendant generally challenges the trial court's determination that the officers' testimony was credible to claim that the evidence about whether he carried the handgun "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. at 276-277 (quotation marks and citation omitted). As discussed in greater depth above, the issues with the evidence identified by defendant do not warrant a conclusion that the trial court's findings were clearly erroneous. *Id*. at 277. Additionally, this Court has been clear that "[c]onflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *Id*. (quotation marks and citation omitted). Indeed, as with a sufficiency analysis, this Court must defer to the trial court's findings of fact especially when they pertain to witness credibility. *Id*. An exception exists when "it can be said that directly contradictory testimony was so far impeached that it was deprived of

all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities . . . ." *People v Roper*, 286 Mich App 77, 89; 777 NW2d 483 (2009) (quotation marks and citation omitted).

Defendant attempts to meet this exception by claiming that the officers' testimony was impeached by the video evidence and contradicted physical possibilities. *Id*. For the reasons discussed above, such is not true. Defendant identified only minor issues with the officers' testimonies that could be explained by a slightly poor memory of an event occurring more than one year earlier. As for the physical possibilities, defendant misinterpreted the testimony to make it seem impossible for him to get the gun into the trunk and halfway inside the lockbox. The actual testimony and video evidence do not render the gun being moved in such a manner as being a physical impossibility. This is also true about defendant's ability to reach the trunk from the driver's seat. In sum, for the same reasons discussed above, defendant's challenge to the great weight of the evidence lacks merit. *Anderson*, 341 Mich App at 276-277. The evidence introduced at trial did not "preponderate[] so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. (quotation marks and citation omitted).

Affirmed.


/s/ Kathleen A. Feeney
/s/ Colleen A. O'Brien
/s/ Randy J. Wallace

-11-