*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MAURICE RONDEAU,

Defendant-Appellant.

UNPUBLISHED
June 12, 2025
3:04 PM

No. 369560
Wayne Circuit Court
LC No. 22-003632-01-FH

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1).[1] Defendant was sentenced to one to 7½ years' imprisonment for his felon-in-possession conviction, to run consecutively to 2 years' imprisonment for his felony-firearm conviction. On appeal, defendant argues that there was inadequate evidence to sustain his convictions, and the trial court improperly assessed 10 points for offense variable (OV) 19, MCL 777.49, based on unconstitutional judicial fact-finding. We affirm his convictions and sentence.

## I. FACTS

On March 17, 2022, defendant was at his mother's house celebrating St. Patrick's Day with his siblings and other relatives. At about 9:45 p.m., Detroit Police Officers Alexander Gunther and Bailey Rumschlag drove by on patrol and observed defendant outside with a group of people and an apparent firearm in his front pocket. Specifically, Officer Rumschlag testified that defendant "had a clear print of a pistol in his front hoody pocket," and Officer Gunther testified that "in the hoody pocket there was a imprint of a handgun and then when we were driving past . . . the hoody pocket opened up and I could see the actual firearm in the pocket." The officers stopped their scout vehicle and approached defendant, who began walking away. Officer Rumschlag heard

---

[1] The jury acquitted defendant of carrying a concealed weapon, MCL 750.227.

-1-

his partner try to get defendant's attention. However, defendant ran to the back of the house and jumped over the gate into the backyard. As defendant jumped over the gate, Officer Gunther observed a black object fall out of defendant's pocket and underneath a bush, which he subsequently collected and identified as a firearm magazine.

Officer Rumschlag followed defendant, who jumped over a fence into the neighboring yard, before again jumping a fence into the next yard. Officer Rumschlag lost sight of defendant after defendant wedged himself between a garage and a car, and next saw him in the neighbor's yard. Defendant went around the front of the house, where he encountered Officer Rumschlag. Defendant stopped and told Officer Rumschlag: "I don't got nothin'. I just got weed." Officer Rumschlag placed defendant in custody but did not locate a firearm on his person.

To locate the firearm, Officer Rumschlag called the K-9 unit, and Officer Steven Brandon, a K-9 handler, arrived with his narcotics dog to search the area. Officer Brandon led the dog along the route followed by defendant and, eventually, the dog alerted to an engine-less car inside a garage.[2] A firearm was located underneath the car, below where the engine would have been situated.[3] Officer Brandon did not recover a magazine with the firearm. But, Officer Gunther was able to fit the recovered magazine into the recovered firearm.

The prosecution played Officer Gunther's body-camera footage, which began with his recovery of the magazine. Explaining the footage, Officer Gunther testified that he remained by the gate attempting to keep other individuals out of the backyard "to help preserve evidence," but he admitted that "people were coming in and out of the backyard as you saw, going in and out of the house." Officer Gunther thought that the other individuals "were trying to like interfere with our investigation in some way, and you know, I thought they maybe would of [sic] taken the evidence . . . ."

Officer Rumschlag testified that he saw the imprint of a firearm "pretty clearly," but did not actually see a firearm. On cross-examination, Officer Rumschlag acknowledged that his body camera was recording when he exited the scout vehicle, and he acknowledged that the officers did not identify themselves as police. However, Officer Rumschlag believed that it was "fairly obvious" there was "no doubt" they were police officers because they "were in a fully marked scout car and in full uniform," explaining that they were driving a black scout car with reflective writing on the side. Still, Officer Rumschlag admitted that he did not say "police" when approaching the group outside the house, but believed he said "hey, how's it going," calling it a "very friendly approach."

Defendant testified that when he heard a car approach, he noticed headlights, but he did not know that it was a police vehicle because he was "in the process of rolling more marijuana." Defendant ran because he was afraid of being robbed, as his mother's neighborhood was

---

[2] While not entirely clear, the officers' testimony implies that the garage where the firearm was located was the garage of the house where defendant was first observed.

[3] Officer Brandon testified that he did not recall that the firearm was covered with debris. In other words, he indicated that the firearm was exposed on the ground.

dangerous. Defendant ran behind the house because he planned to enter through the back door, but kept running because he "felt somebody was behind" him. Defendant "panicked" because he did not know it was the police. Defendant denied being close to the garage or in possession of a firearm. Defendant speculated that what fell from his pocket underneath the bush was his cellular phone.

The jury acquitted defendant of carrying a concealed weapon, but convicted him of felon-in-possession and felony-firearm. Defendant subsequently moved for a JNOV, which the trial court apparently denied. At sentencing, he was assessed 10 points for offense variable (OV) 19, resulting in a guidelines score of 7 to 28 months in prison. Defendant was sentenced as described. This appeal followed.

## II. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to sustain his convictions and, relatedly, his convictions were against the great weight of the evidence. We disagree.

"This Court reviews de novo defendant's challenge to the sufficiency of the evidence." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*. "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted).

"We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*. The question in a great-weight challenge is whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011) (quotation marks and citation omitted).

## A. SUFFICIENCY OF THE EVIDENCE

"The sufficient evidence requirement is a part of every criminal defendant's due process rights." *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). The prosecution "need not negate every reasonable theory consistent with innocence," but need only prove the elements of the crime "in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant was convicted of felon-in-possession and felony-firearm. To prove felon-in-possession, the prosecution must establish: (1) defendant possessed a firearm, (2) defendant was previously convicted of a specified felony, and (3) the statutory terms for legal possession have not been satisfied. See *People v Perkins*, 262 Mich App 267, 269; 686 NW2d 237 (2004), abrogated in part on other grounds by *People v Smith-Anthony*, 494 Mich 669; 837 NW2d 415 (2013). See also MCL 750.224f(1) and (2). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

On appeal, defendant only disputes that there was sufficient evidence he was in possession of a firearm.[4] Possession is a question of fact for the jury, and "can be proved by circumstantial evidence and reasonable inferences arising from the evidence." *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011).

Viewed in a light most favorable to the prosecution, the evidence, and reasonable inferences arising from it, were sufficient to enable the jury to find beyond a reasonable doubt that defendant was in possession of a firearm. Officer Rumschlag testified that when the officers approached the scene, he observed defendant with "a clear print" of a firearm, and Officer Gunther testified that he observed both the firearm imprint and the firearm itself. This testimony alone was legally sufficient to sustain his convictions. Further, Officer Gunther observed what was subsequently determined to be a firearm magazine fall from defendant as he was fleeing the scene, and the firearm that was found under the car did not have a magazine. And, when defendant was apprehended, he did not have a firearm on his person, but the firearm that was found under the car was along the route that he ran when attempting to flee. Taken together, the most logical explanation is that defendant had a firearm when he was first observed by the police but deposited the firearm under the car when he was attempting to flee the police. Thus, the evidence was sufficient to prove that defendant was guilty of felon-in-possession and felony-firearm beyond a reasonable doubt. See *People v Barbee*, 325 Mich App 1, 12-13; 923 NW2d 601 (2018) (concluding that sufficient circumstantial evidence existed for a jury to reasonably infer that the defendant possessed a firearm where police testimony described the defendant's suspicious movements and conduct before discovering a firearm in a location consistent with the nature of his movements).

## B. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that his convictions were against the great weight of the evidence. A new trial may be granted when the verdict is against the great weight of the evidence. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Lacalamita*, 286 Mich App at 469. For example, directly contradictory testimony may warrant a new trial only when it "was so far impeached that it was deprived of all probative value or that the

---

[4] Defendant concedes that he was ineligible to possess a firearm.

jury could not believe it, or contradicted indisputable physical facts or defied physical realities." *Lemmon*, 456 Mich at 645-646 (quotation marks and citations omitted).

Defendant observes that the prosecution did not introduce fingerprint or DNA evidence linking him to the firearm, and multiple people being in the vicinity resulted in a "strong likelihood that someone other than" defendant possessed the firearm. However, with regard to the lack of fingerprint or DNA evidence, in light of the evidence previously discussed—specifically, the officers' testimony about viewing the firearm and its imprint, as well as the circumstances surrounding the recovery of the firearm and the magazine—the fact that neither fingerprint nor DNA evidence was introduced against defendant does not render his convictions against the great weight of the evidence. In other words, while fingerprint or DNA evidence would have strengthened the prosecution's case, the lack thereof did not overshadow the other incriminating evidence introduced against defendant at trial. As explained, this evidence was more than sufficient to sustain his convictions. Further, while there were other people in the vicinity at the time, defendant testified that he was unaware of anyone else present possessing a firearm. Thus, given the circumstances of this case, there is no reason to assume that the firearm at issue was possessed by anyone other than defendant.

Defendant also asserts that Officer Gunther's and Officer Rumschlag's testimony was full of "material inconsistencies," and it is "simply not credible that the officers could have seen anything given that it was dark."[5] While the officers' testimony regarding lighting was inconsistent,[6] the jury watched the body-camera footage and found the officers' testimony regarding their visibility to be credible. We defer to its assessment in this regard. See *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016). Moreover, the officers' testimony about viewing the firearm or its imprint was not the only incriminatory evidence against defendant. Rather, a firearm without a magazine was located along the route where defendant attempted to flee from the police, and that firearm matched a magazine that apparently dropped from defendant earlier during the chase.

Defendant finally suggests that the jury verdict was inconsistent, as the jury acquitted him of carrying a concealed weapon but convicted him of felon-in-possession and felony-firearm. However, "inconsistent verdicts within a single jury trial are permissible and do not require reversal." *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015). Regardless, the verdict here was not necessarily inconsistent. The trial court instructed the jury that, with regard to the elements of carrying a concealed weapon, "[a] pistol is concealed if it cannot easily be seen by those who come into ordinary contact with the Defendant." In this case, the officers testified that they observed the firearm imprint or the firearm itself, or both, as they first approached the

---

[5] The only inconsistent testimony that defendant refers to beyond lighting is, "One officer asserted an object was thrown and the other believed something may have been dropped."

[6] Officer Gunther testified that it was "light" outside and it "hadn't gotten dark yet," but acknowledged on cross-examination that they arrived on the scene at about 9:45 p.m. Officer Rumschlag testified it was "like dusk," but admitted "[o]n further review it was dark outside."

scene. This testimony, if believed by the jury, would establish that defendant is not guilty of carrying a concealed weapon but is guilty of felon-in-possession and felony-firearm.

For these reasons, we conclude that there was sufficient evidence to sustain defendant's convictions and that his convictions were not against the great weight of the evidence.

### III. OV 19

Defendant next argues that there was no evidence to support assessing him 10 points for OV 19 because he was not ordered to stop and was immediately taken into custody without incident. We conclude that the facts used by the trial court arguably were insufficient to assess 10 points for OV 19. However, the trial court ultimately reached the correct result.

This Court reviews for clear error a trial court's factual findings in support of a particular score under the sentencing guidelines. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded in part by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573; 935 NW2d 51 (2019). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Blevins*, 314 Mich App at 348-349. A trial court's "factual determinations . . . must be supported by a preponderance of the evidence." *Hardy*, 494 Mich at 438. "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 19 is scored for "interference with the administration of justice." MCL 777.49. A court must assess 10 points if "the offender otherwise interfered with or attempted to interfere with the administration of justice . . . ." MCL 777.49(c).[7] "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).

In this case, the trial court held that 10 points were correctly assigned for OV 19 because of "some testimony from one or multiple police officers that they were clearly marked as police officers when they . . . initially engaged with [defendant] before he fled from them." In this regard, Officer Gunther testified that as the officers approached defendant, he began walking away, and Officer Rumschlag testified that he may have said "hey, how's it going," describing his approach as "[v]ery friendly," when defendant began running.

In *Ratcliff*, this Court affirmed a trial court's assessment of 10 points for OV 19 where the defendant fled from the police contrary to an order to stop. *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474 (2013), vacated in part on other grounds, 495 Mich 876 (2013). Here, in contrast, the record does not clearly indicate that defendant was given any order to stop by the officers when they initially made contact with him. Rather, the record shows that defendant was

---

[7] MCL 777.49(a) and (b) refer to aggravated situations that are not present here.

walking away as officers exited their vehicle, and the record is ambiguous, at best, regarding whether defendant was ordered to stop by the officers. Further, even if defendant was given an order to stop at some point before or during the chase, it is debatable whether his disregard of such an order would be sufficient for the purposes of OV 19. Indeed, the prosecution on appeal seemingly does not advance that position.

In any event, the trial court reached the correct result because attempting to dispose of evidence warrants a 10-point score under OV 19. *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). The officers' testimony indicates that defendant was in possession of a firearm when officers initially made contact with him, that defendant did not have a firearm on his person when he was placed in custody, and that a firearm was found under a car that matched the magazine discarded by defendant at the start of the chase. The only logical interpretation of these events is that defendant intentionally placed his firearm under the car during the chase in an attempt to avoid legal responsibility for his unlawful possession of that firearm. There is no feasible alternate interpretation of the record that does not involve an attempt by defendant to hide his illegally-possessed firearm from the officers during the chase. Therefore, because "OV 19 is generally scored for conduct that constitutes an attempt to avoid being . . . held accountable for the sentencing offense," *Sours*, 315 Mich App at 349, 10 points were properly scored for that variable.

"This Court will not reverse when a lower court reaches the right result for the wrong reason." *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022). Thus, although the facts used by the trial court were insufficient to assess 10 points for OV 19, resentencing is unnecessary because the trial court ultimately reached the correct result on the basis of evidence adduced at trial.[8]

## IV. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan

---

[8] Finally, defendant argues that his Sixth Amendment rights were violated because the trial court engaged in unconstitutional judicial fact-finding to support his OV 19 score. In *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015), however, our Supreme Court held that such judicial fact-finding renders the sentencing guidelines advisory only. There is nothing in the record to suggest that the trial court in this case was unaware of the advisory nature of the guidelines under *Lockridge*. Thus, relief is not warranted for this issue.